Argued October 27, 1971, affirmed February 4, petition for
rehearing denied March 7, petition for review
denied April 25, 1972

STATE OF OREGON, *Respondent, v.* WAYNE
KOBERSTEIN and KATHRYN ANN
KOBERSTEIN, *Appellants.*

493 P2d 176

*Joseph P. Morray,* Corvallis, argued the cause for appellants. With him on the briefs were Colley and Morray, Corvallis.

*Todd G. Brown,* Deputy District Attorney, Corvallis, argued the cause for respondent. With him on the brief was Frank D. Knight, District Attorney, Corvallis.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Defendants, husband and wife, were indicted for unlawful possession of narcotics. ORS 474.020. They waived trial by jury and were convicted by the court. They appeal, asserting as sole error the denial of their motion to suppress certain evidence seized in their apartment. Although separately indicted, their cases were, with their consent, consolidated for trial and upon appeal.

Defendants resided at 623 S. W. Fourth Street in Corvallis, Oregon. This was an older residence which contained two living units. Defendants lived in the first floor apartment; a separate apartment was on the second floor, although there was no evidence introduced to indicate that this apartment was or ever had been occupied. The house faced west. A single flight of stairs went from ground level to a large porch which extended around much of both sides of the house. The door leading into the defendants' unit was located on the north side and the door leading to the upstairs unit was on the south side, facing west. Both doors exited onto the single front porch. The house also had a basement, which was accessible from the defendants' apartment by an interior stairway and from the outside through a doorway. There was a single address for the entire house, and neither apartment was identified by a separate number.

On September 18, 1970, the District Attorney for Benton County presented two affidavits to the district judge in support of his prayer for a warrant to search "the residence located at 623 S. W. Fourth, in the City of Corvallis, in Benton County, Oregon." The first affidavit stated the district attorney's ground for believing that large quantities of narcotic drugs were being illegally possessed by Jeff Valentine and Scott Darroch in their residence, an apartment at the rear of the Willamette Veterinary Clinic building, located at 650 S. W. Third Street, Corvallis. This affidavit made no mention of the defendants nor of the residence at 623 S. W. Fourth Street. The second affidavit stated that the affiant had been listening to radio transmissions of surveillance being conducted by agents of the Federal Bureau of Narcotic and Dan-

gerous Drugs, Corvallis City Police and Benton County Sheriff's office. The affidavit further stated:

"* * * That at 12:40 p.m. the officers on surveillance observed a subject taking a box out of a vehicle, a late model Saab, Oregon license #DER 648. The person took the box in the direction of the residence located at 623 S.W. 4th Street. At 12:45 p.m., Mike Holm, a special agent of the Federal Bureau of Narcotic and Dangerous Drugs entered the residence of Jeff Valentine and Scott Darroch at 650 S.W. 3rd Street in the City of Corvallis and a short time later Jeff Valentine was seen leaving the aforementioned residence and walking up the alley in the direction of 623 S.W. 4th Street. A few moments later he was observed by surveillance agents leaving 623 S.W. 4th Street carrying the aforementioned box. He carried the box into the residence located at 650 S.W. 3rd Street. Special Agent Michael Holm has indicated on the radio that he has observed the box and it contains five pounds of hashish.

"I have probable cause to believe that narcotic drugs, to-wit: marihuana in hashish form is being illegally possessed and concealed in the residence located at 623 S.W. 4th Street in the City of Corvallis, Benton County, Oregon, and also that marihuana in hashish form is concealed in the aforementioned late model SAAB, Oregon license #DER 648, and I therefore pray the Court to issue a search warrant to search the aforementioned residence located at 623 S.W. 4th Street in the City of Corvallis, Benton County, Oregon, and any persons found therein and to search the aforementioned late model SAAB, Oregon license #DER 648 for the aforementioned narcotic drugs."

The district court thereupon issued a warrant to search "the residence located at 623 S.W. Fourth" and the Saab automobile, stating that the issuance was based upon the district attorney's second affidavit, which incorporated the first affidavit as a part thereof.

While the warrant was being sought and prepared, Detective Sergeant Stonewall of the Benton County Sheriff's office maintained surveillance on the dwelling at 623 S. W. Fourth Street. While he was doing so, defendant Wayne Koberstein and another person, Waldron, emerged from the Koberstein apartment. Sergeant Stonewall approached them as they stood on the front porch, identified himself as a police officer, and requested that they remain on the premises. While he was talking to Wayne Koberstein and Waldron, defendant Kathryn Ann Koberstein came out of the Koberstein apartment. Mrs. Koberstein was told by her husband to go back into the house, that "the cops are here." She went back into the house.

Some 15 or 20 minutes later, Sergeant Jack C. Uhden of the Corvallis Police Department arrived at 623 S. W. Fourth Street with the search warrant. Special Agent Freeman of the Federal Bureau of Narcotic and Dangerous Drugs also arrived at that time. Sergeant Uhden identified himself as a police officer, announced that he had a warrant to search the house, and asked who lived at the residence. Wayne Koberstein identified himself as the one living there. Special Agent Freeman then walked to the front door of the Koberstein apartment and opened the door and entered the apartment, followed by Sergeant Stonewall, Wayne Koberstein and Sergeant Uhden. Sergeant Stonewall immediately began looking for Mrs. Koberstein, and when he could not locate her, he went to the basement. Just as he entered the basement, he passed Mrs. Koberstein, who was returning toward the stairs.

Two other officers, Woods and Montgomery, were observing the rear of the house while awaiting the arrival of the search warrant. When Sergeant Uhden arrived with the search warrant, they went to the

rear door of the Koberstein apartment and entered the premises. As Officer Woods entered, he met Mrs. Koberstein coming up the stairs and identified himself as a police officer. She replied, "I know." Officer Woods then went downstairs to the basement, where he joined Sergeant Stonewall.

The officers then searched the Kobersteins' apartment and the basement, finding and seizing 95 grams of marihuana, three and one-half grams of hashish and 25 grams of marihuana seeds. Pipes containing residue of burned marihuana were also seized. The second floor apartment was not searched. Defendants were subsequently arrested and charged with possession of the marihuana found and seized in the course of the search of the apartment and the basement.

Prior to trial, defendants filed motions to suppress and exclude all the evidence seized in the course of the search. After a hearing at which only the state put on evidence, the trial court denied defendants' motion to suppress. At the trial many of the seized items were introduced in evidence against the defendants.

■ The defendants here assign as error the trial court's denial of their motion to suppress on the grounds that (1) there was no showing of probable cause to support the issuance of the search warrant, (2) the search warrant failed to describe with particularity the place to be searched, and (3) the police officers failed to knock and announce their authority and purpose in violation of ORS 133.290.

From the facts recited above, it is clear that there was probable cause to support the issuance of the search warrant, for the affidavits supplied a rea-

sonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that narcotic drugs were being illegally possessed and concealed in the residence located at 623 S. W. Fourth Street. *State v. Keith,* 2 Or App 133, 142, 465 P2d 724, Sup Ct *review denied* (1970); *State v. Skinner,* 5 Or App 259, 483 P2d 87, Sup Ct *review denied* (1971) *cert denied* 406 US 973 (1972).①

■■ A more difficult problem is presented by defendants' assertion that the search warrant failed to particularly describe the premises to be searched. There is little authority in this state that is directly in point. As a general proposition, the rule is that a search warrant directed against a multiple-occupancy structure will usually be held invalid if it fails to describe the particular sub-unit to be searched. *Siverson v. Olson,* 149 Or 323, 40 P2d 65 (1935); Annotation, 11 ALR3d 1330 (1967). In *Siverson,* the Oregon Supreme Court, in holding insufficient the description of the place to be searched, stated:

"It appears from defendants' answer, and from the testimony in the case that there were at least two buildings upon the premises designated as No. 309 East Hancock street in Portland; and that these two buildings were occupied by different persons. It also appears from the testimony that the residence at said street number was occupied by two families, Mr. Porter and his mother residing

---

① Although at first blush the search warrant affidavits involved in this case bear a certain resemblance to those that we held to be inadequate in State v. Metler, 6 Or App 356, 487 P2d 1377 (1971), and State v. Fahey, 7 Or App 23, 489 P2d 980 (1971), there is an important distinction. Here, unlike in *Metler* and *Fahey,* the box observed being carried from defendants' premises was, minutes later, found to contain five pounds of hashish.

in the upper part of the house and plaintiff and his wife occupying the rest of the residence. The description in the affidavit is, 'a certain building situated on the premises occupied by and under the control of said John Doe at No. 309 East Hancock Street'. Under the facts of this case, such a description is insufficient [citing authorities]." 149 Or at 328.

A more recent statement of the law than that found in *Siverson* may be seen in *State v. Cortman*, 251 Or 566, 446 P2d 681 (1968), *cert denied* 394 US 951, 89 S Ct 1294, 22 L Ed 2d 487 (1969). There a police officer received a telephone call from an informer who claimed to have observed heroin in the defendant's apartment. The officer, who had some personal knowledge of the defendant's activities and knew his location in the apartment, went to the magistrate and obtained a warrant. The warrant identified the apartment only by street number and by the name of the occupant. The defendant claimed that the warrant was fatally defective because it did not also designate his apartment by its number within the building. In rejecting this contention, the court said:

"The purpose of the particular-description requirement is to narrow the scope of the search to those premises for which a magistrate has found probable cause to authorize the search. When the warrant designates the premises by means that will properly limit the search, there is little risk that other premises will be subjected to unreasonable examination. * * * The relevant inquiry is whether a police officer can execute the warrant without straying into premises which he has no authority to enter." 251 Or at 569.

*See also, State v. Skrelunas,* 1 Or App 182, 187, 460 P2d 869 (1969).

In a recent American Law Reports annotation, the general rule of law on this subject is set forth:

"Consonant with the general requirement that search warrants contain a particular description of the premises to be searched, a search warrant directed against a multiple-occupancy structure will usually be held invalid if it fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search thereunder of other units located in the larger structure and occupied by innocent persons." 11 ALR3d 1330, 1333 (1967).

In the above-noted annotation, an important exception to the general rule is stated as follows:

"An exception to the rule that a search warrant directed against a multiple-occupancy structure must specify the subunit to be searched has been recognized in some cases where the multiunit character of the premises was not externally apparent and was not known to the officers applying for and executing the warrant." 11 ALR3d 1330, 1344-45.

*See, United States v. Santore,* 290 F2d 51 (2d Cir 1959), *cert denied* 365 US 834, 81 S Ct 749, 5 L Ed 2d 744 (1961); *Minovitz v. United States,* 298 F2d 682 (DC Cir 1962). In the case at bar, there was no evidence whatsoever indicating that the police knew or should have known there were two living units in the house. Indeed, from the evidence, one could reasonably conclude that from all outward appearances the structure was a single unit dwelling. Not only was there nothing to indicate that the structure was occupied by any party other than the two defendants, but when Mr. Koberstein was standing on the porch and was asked by one of the officers who lived in the house, he replied that he was the one who lived there.

■ Thus there was nothing to put the officers on notice of the necessity of securing a particular description of the place to be searched. We are dealing in this case with a two-story wooden structure with a door on the front and a door on the north side around the side of the house opening off a common porch. It was described throughout the second affidavit, throughout the testimony at the hearing on the motion to suppress, and during the trial simply as a residence or house. At no time during the hearing was it shown by defendants that the authorities actually knew that this dwelling contained two living units rather than one at the time they sought or served the search warrant. Here defendants offered no testimony of their own. If this residence bore any outward indicia that it contained more than one dwelling unit so as to put the authorities on notice of its character, it was clearly within the defendants' power to elicit such a characterization either through their own testimony at the motion to suppress or through cross-examination of the officers who testified. Since the search here was pursuant to a warrant, the burden of proof is upon the defendants to show that the warrant was invalid. *State v. Elkins,* 245 Or 279, 292, 422 P2d 250 (1966); *State v. Sanford,* 245 Or 397, 402, 421 P2d 988 (1966). The defendants failed to sustain this burden. Thus it was not unreasonable for the trial court to conclude that the warrant was valid.

■ Defendants' third ground for contending that the trial court erred in denying their motion to suppress is that the manner of entering the residence failed to comply with ORS 133.290. This statute provides:

"The officer may break open any outer or inner door or window of a dwelling house, or otherwise,

to execute the warrant if, after notice of his authority and purpose, he is refused admittance."

Defendants' contention here is without merit. It will be recalled that, prior to the search, Officer Uhden, who arrived with the search warrant, identified himself to Mr. Koberstein, who was then standing outside on the porch, and stated his purpose. The defendants both already knew they were police officers. It was only at that time that entry was made by Officer Freeman into the dwelling.

Affirmed.