560

Argued October 27, reversed and remanded November 24, petition
for rehearing denied December 20, 1972, Supreme Court
affirmed July 19, 1973

## STATE OF OREGON, *Appellant, v.* RENNIA WRIGHT, JR. (No. C-71-12-3856 CR), *Respondent.*

503 P2d 514
511 P2d 1223

*Thomas H. Denney,* Assistant Attorney General,

Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

This case arises out of the granting by the circuit court of defendant's motion to suppress evidence seized by the police pursuant to a search warrant issued out of the Portland Municipal Court, and the state appeals.

The affidavit for the warrant stated:

"That I am a police officer of the Portland Police Bureau assigned to the Narcotics detail, and have investigated numerous cases of violation of the narcotics and dangerous drugs laws in the metropolitan Portland area during recent years;

"That on November 1, 1971, I was in contact with a person who has, in the past, furnished myself and other members of the Portland Police Bureau Narcotic detail with a considerable amount of information regarding narcotics and the illicit trafficking of narcotics in the City of Portland;

"That I know the informant to be reliable because the information given to me and to other members of the Portland Police Bureau Narcotic detail, by this informant, has, in the past ten months, led to the seizures of narcotics and/or dangerous drugs on three occasions and to the arrests of three persons and, further, the informant has furnished me and other members of the Narcotic detail with information regarding the identity

and activities of known narcotics users and dealers which I have verified, in conjunction with other officers, by investigation and/or personal knowledge;

"That the informant told me that the informant has, within the past 48 hours, been present in the residence at 5814 NE 17th Avenue, Portland, Multnomah County, Oregon. That the informant, while present therein, observed the occupant, Rennia Wright, possess a quantity of heroin, a narcotic drug. The informant further advised that the informant, on previous occasions, has observed Rennia Wright's friend, Carole Young, also possess heroin in the premises. The informant further advises that Rennia Wright has discussed the illicit heroin traffic with the informant in the presence of Carole Young on several occasions. The informant further advises that on previous occasions, the informant has observed Rennia Wright to possess heroin and to transport heroin in his, Rennia Wright's, personal automobile, a white, 1971 Cadillac, bearing Oregon license plates FFF-040. The informant stated that the informant knows that Rennia Wright has concealed heroin in this vehicle in the past and believes that heroin is presently concealed in it. The informant also stated that Rennia Wright has also indicated that he conceals heroin in the yard outside the residence of 5814 NE 17th Avenue and believes that Rennia Wright presently has heroin so concealed;

"That the said informant has considerable knowledge of what heroin looks like and how heroin is packaged and sold and has, in the past, used heroin;

"*That the said informant advises that Rennia Wright, whom I personally know, and Carole Young, whom I personally know, both reside at 5814 NE 17th Avenue. That I have, on numerous occasions, observed both subjects to enter and leave the premises and further, that I was present when a search warrant was served on 5814 NE 17th*

*Avenue on October 5, 1971, which resulted in the arrest of Carole Jean Young for Possession of Narcotics and Dangerous Drugs. During the search, numberous [sic] personal items of Rennia Wright were found throughout the apartment;*

"That the said informant advises that Rennia Wright possesses a handgun and a shotgun in the apartment;

"That the said informant advises that the residence of Rennia Wright and Carole Young, located at 5814 NE 17th Avenue, is a brown one-story wood frame duplex located on the East side of NE 17th Avenue. That the unit of the said Rennia Wright and Carole Young is the one to the South end and has it's [sic] own street number of 5814 NE 17th Avenue;

"That I am personally familiar with the premises of 5814 NE 17th Avenue and know it to be as described by the said informant;

"That based on the foregoing, I have probable cause to believe that there is located in the above-described premises, and the aforesaid described automobile and on the persons of the occupants of that said house, Rennia Wright and Carole Young a quantity of narcotics, to-wit: heroin and I therefore pray the above entitled Court to issue a Search Warrant to examine the above described premises, including the surrounding yard area and persons and search for the above described contraband property." (Emphasis supplied.)

Based thereon a judge of the Municipal Court of Portland issued a warrant requiring

"* * * immediate search of the person of the said Rennia Wright and Carole Young and in the premises situated at 5814 NE 17th Avenue, including the surrounding yard & a white 1971 Cadillac, Oregon license FFF-040 in the City of Portland, County and State aforesaid for the following con-

traband property. Heroin, a narcotic drug, and narcotics paraphernalia."

The search of Wright and Young and of the described premises did not reveal heroin. However, the officers did in the course of the search discover in plain view[1] both marihuana and lysergic acid diethylamide (Eskatrol).

■ In *State v. Spicer,* 3 Or App 120, 473 P2d 147 (1970), this court, quoting with approval *Abel v. United States,* 362 US 217, 80 S Ct 683, 4 L Ed 2d 668 (1960), said:

> "'* * * When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for. * * *'" 3 Or App at 126.

*See also, State v. Muetzel,* 121 Or 561, 564-65, 254 P 1010 (1927). The seizure of the marihuana and the Eskatrol was clearly valid, if the warrant itself was validly issued.

Subsequently both Wright and Young were indicted for illegal possession of narcotics and dangerous drugs. They each filed a motion to suppress the evidence seized. It was stipulated by counsel in the trial court that the evidence concerning the affidavit and the warrant would apply to both cases.

The principal challenge therefore is to the sufficiency of the affidavit, and secondarily to the propriety of certain procedures required by the trial judge.

---

[1] Defendant expressly concedes:

"* * * The subsequent search incident to the arrest disclosed marijuana located on a counter between the living room, kitchen and two capsules of Eskatrol on the bedroom dresser."

■ It is elementary that no search or arrest warrant can issue except upon "probable cause, shown by affidavit, naming or describing the person, and describing the property and the place to be searched." ORS 141.030. Additionally, Oregon statutes provide:

> "Before issuing the warrant, the magistrate shall examine on oath the complainant and any witnesses he may produce, take their depositions in writing and cause the depositions to be subscribed by the parties making them." ORS 141.050,

and

> "If the magistrate is satisfied that there is probable cause to believe that the grounds of the application exist, he shall issue the search warrant." ORS 141.060.

■ Here the magistrate issued the warrant only on the basis of the affidavit above set forth. No further witnesses were produced by the complainant as permitted under ORS 141.050. Thus the question of the validity of the search warrant rests upon whether or not the affidavit established the requisite facts to support the magistrate's finding of probable cause. Examination of it satisfies us that it does.

In *State v. Spicer,* 254 Or 68, 70-72, 456 P2d 965 (1969), our Supreme Court said:

> " 'Probable cause' in an affidavit to procure a search warrant is much less than proof beyond a 'reasonable doubt' which is necessary to convict of crime. Therefore, hearsay evidence may be the basis for the issuance of a warrant if there is a substantial showing of the reliability of the hearsay. *State v. Tacker,* 241 Or 597, 407 P2d 851, 10 ALR3d 355; *United States v. Ventresca,* 380 US 102, 85 S Ct 741, 13 L ed 2d 684; *McCray v. Illinois,* 386 US 300, 87 S Ct 1056, 18 L ed 2d 62.

"The affidavit presented to the magistrate relates that the informer told the affiant that he had made several purchases of marijuana from Roy Spicer at a house located in Portland, Oregon, 'over a period of time since last summer.' The affidavit then recites factually what the affiant did to corroborate the information given him by the informant.

"Where hearsay is corroborated by a recital of facts within the personal knowledge of the affiant which would lead a reasonably cautious person to believe the informant to be reliable, then the hearsay is sufficient to justify probable cause for the issuance of a warrant or probable cause to arrest. *State v. Henry,* 249 Or 287, 437 P2d 851; *State v. Penney,* 242 Or 470, 410 P2d 226.

"* * * * * *

"In the matter before us, the affidavit discloses that the informer, whose reliability was tested, stated he had made several purchases of marijuana over quite a long period of time from the defendant at the same place where he purchased for the officer. This, it would seem, would impress a reasonable mind with the thought that the possession of marijuana at the defendant's home was a continuing business enterprise and, in the absence of some fact that would disclose otherwise, the affidavit should be sustained '* * * [A]ffidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.' *United States v. Ventresca,* supra, 380 US 102, 108."

■ It is clear that under the "informer's privilege" the state may withhold from an affidavit made by a police officer for a search warrant the name of an informant and that such hearsay may be considered by the magistrate so long as he is " ' "informed of some of the underlying circumstances" supporting the affiant's

conclusions and his belief that any informant involved *"whose identity need not be disclosed . . .* was 'credible' or his information 'reliable.' " \* \* \*' " (Emphasis in original.) *McCray v. Illinois,* 386 US 300, 311, 87 S Ct 1056, 18 L Ed 2d 62 (1967), as quoted and followed in *State v. Evans,* 1 Or App 489, 493, 463 P2d 378, Sup Ct *review denied* (1970).

Here, as in *Evans* and *State v. Cortman,* 251 Or 566, 446 P2d 681 (1968), *cert denied* 394 US 951 (1969), there was ample corroboration set forth by the affiant based on his own personal knowledge not only of the persons and of the place of residence of both Wright and Young, but of Young's direct involvement in unlawful drug activity, including the possession at that residence less than a month before of narcotic drugs, to support a reasonable belief of the reliability of the informant's statement that he had seen heroin in that home within the past 48 hours. Additionally, the affidavit not only set forth affiant's belief that the informer was reliable but set forth the facts in sufficient detail upon which this belief was based. No evidence was offered by defendant at the hearing on the motions to suppress and to controvert the warrant tending to contradict the facts set forth in the affidavit. In *State v. Koberstein,* 8 Or App 307, 316, 493 P2d 176, Sup Ct *review denied* (1972), we held:

"\* \* \* Since the search here was pursuant to a warrant, the burden of proof is upon the defendants to show that the warrant was invalid. *State v. Elkins,* 245 Or 279, 292, 422 P2d 250 (1966); *State v. Sanford,* 245 Or 397, 402, 421 P2d 988 (1966). \* \* \*"

He thus failed to sustain his burden of proof.

■ The defendant filed a motion in the circuit

court under ORS 141.150 seeking to controvert the affidavit and the warrant in addition to the motion to suppress, stating that "[a]t this examination the Defendant will controvert the grounds upon which the warrant was issued."[2] This was originally filed before the magistrate who issued the warrant. Later by agreement of the defendant and the state it was dismissed in that court in reliance upon *State v. Stahley,* 7 Or App 464, 492 P2d 295 (1971), and *State v. Ronniger,* 7 Or App 447, 492 P2d 298 (1971). By agreement of the parties the motion to controvert was refiled in the circuit court. The defendant conceded that the burden of proof thereon was upon him.

■ The court, relying on *State v. Stahley,* supra, and *State v. Ronniger,* supra, thereupon assumed that

---

[2] The record shows:

"MR. SUTHERLAND [deputy district attorney]: There was, Your Honor, a motion to controvert filed before Judge Jordan. It was originally set for January 18th. It was withdrawn on January—it was reset several times. It was withdrawn on January 28th by both the defense and the State based upon two cases; *State vs. Staley* [sic], which is in 93 Advanced [sic] Sheets at 1616; and also, *State vs. Ronniger,* which is in 93 Advanced [sic] Sheets—I don't have the beginning of the case, but in the area of 1580.

"These two cases indicates that a motion to controvert can be heard at a Circuit Court level, and, in fact, if it was heard at the lower court level before the issuing magistrate, could be reraised by the Circuit Court.

"Therefore, in the interest of judicial economy, and because of the type of proceeding which I'm going to request that the Court follow, it was decided with the consent of the District Attorney's Office that the entire hearing be before the trial Court. And for that reason, the motion to controvert is before you as part of the motion to suppress.

"THE COURT: As part of the motion to suppress?

"MR. HENNINGS [Multnomah County Public Defender]: Yes.

"THE COURT: All right. In view of the fact that there is a warrant, I take it that the burden, then, would be upon yourself.

"MR. HENNINGS: That's correct, Your Honor."

it had jurisdiction to hear and dispose of the motion to controvert. In the view we take of this case we find it unnecessary to consider the validity of the procedures sought to be invoked by the defendant.[9]

The transcript reveals only that the defendant called as his first witness the officer who executed the affidavit. Nothing in his brief testimony controverted

---

[9] State v. Stahley, 7 Or App 464, 492 P2d 295 (1971), dealt with a case where the defendant in compliance with ORS 141.150 had sought and obtained a hearing on his motion to controvert before the magistrate and in the court out of which the search warrant issued. No record was made of that proceeding. Thus in *Stahley* the clear directive of ORS 141.150 that a motion to controvert is to be brought before the magistrate who issues the search warrant was complied with. *Stahley* held only that absent a supporting record made before the magistrate, the circuit court was not bound by the ruling of the magistrate. In such a situation we held that "the trial court has the inherent power to re-examine the ruling of the magistrate at the behest of the defendant." Thus we held only that where no supporting record had been made before the issuing magistrate in connection with its hearing on defendant's motion to controvert, its order thereon was not res judicata, and thus it was subject to re-examination in the circuit court.

In State v. Harris, 119 Or 422, 427, 249 P 1046 (1926), the Supreme Court said:

"* * * After a search-warrant has been issued upon probable cause shown by affidavit, if the defendant from whose possession property has been taken, desires to contest the grounds of issuing the warrant he should at a proper time appear before the magistrate who issued the warrant, and controvert the grounds upon which the warrant was issued or raise an issue in regard to the issuance thereof. As will be noticed by the statute it is the duty of the magistrate to examine the matter by taking testimony in relation thereto.",

and concluded:

"* * * Under all the circumstances in this case it does not seem that the defendant pursued the proper remedy, or was entitled to an order restoring possession of the property introduced in evidence." 119 Or at 427.

*See also:* Oregon Criminal Law Handbook, Search and Seizure §§ 20.55 through 20.58 (1969).

in any material way the content of the affidavit. Indeed it affirmed it so far as it went.

■ The rule is clear that the burden of showing falsity as to any material fact in the affidavit is on the defendant. In *McCray v. Illinois*, supra, the United States Supreme Court pointed out:

> "Nothing in the Due Process Clause of the Fourteenth Amendment requires a state court judge in every such hearing to assume the arresting officers are committing perjury. 'To take such a step would be quite beyond the pale of this Court's proper function in our federal system. It would be a wholly unjustifiable encroachment by this Court upon the constitutional power of States to promulgate their own rules of evidence . . . in their own state courts . . . .' *Spencer v. Texas,* 385 U.S. 554, 568-569." 386 US at 313.

Defendant at no time offered any evidence tending to falsify or controvert the facts contained in the affidavit or testified to by the officer-affiant in open court.

We have already concluded that the affidavit as a matter of law was sufficient to establish the requisite probable cause to support the issuance of the warrant.

The reason the trial court did not rule on the sufficiency of the affidavit was because, as a part of the motion to controvert, at the request of the defendant he determined to hold an *in camera* hearing in the absence of the defendant and both counsel to inquire further of the officer as to whether:

a) The informant existed;
b) The informant had been reliable in the past;
c) The informant was reliable in the present instance.

The court decided to proceed at that time to hold the *in camera* hearing prior to any further examination of the police officer, despite the fact the defendant had not concluded his direct examination of the witness and the state had not yet been afforded any opportunity to cross-examine. Furthermore, neither defendant nor the state had waived their right to the production of other witnesses.

■ Under these circumstances, including the fact that the witness would be unrepresented by counsel at the *in camera* examination, the state advised the court it would not waive the informer's privilege.

The court then concluded:

"1. The circuit court, trial department, has the jurisdiction to consider a motion to controvert, although the court was not the magistrate issuing the search warrant.

"2. Defendant's request of procedure is a proper and reasonable way for the court to determine the probable existence or reliability of the informant under the fact situation, and is authorized by law.

"3. The court is unable to determine the reliability or the existence of the informant as raised by defendant's motion to controvert, and based upon the court's inability to determine the existence or reliability of the informant, defendant's motion to suppress evidence is sustained."

However, neither the briefs, the affidavit nor our own examination of the transcript reveals any evidence tending to show that the informant did not exist. Both the affidavit and the officer's in-court testimony established that the informant did exist, and that he had been reliable in the past. No contrary offer of proof was made by the defendant as to either

matter, nor that any of the hearsay facts furnished by the informer and reported in the affidavit were false or otherwise unreliable. Thus there was no evidence before the court to support a contrary conclusion as to any of the matters asserted by the defendant. Since the burden was on the defendant to establish a basis for invalidity or falsity of some material issue of fact, which he did not do, it was error to grant the motion to suppress.

It follows from the foregoing that the order granting the motion to suppress must be set aside, and the case remanded for trial.

Reversed.