RICCI EDWARD SCHMIDT *v.* STATE OF MARYLAND

[No. 520, September Term, 1972.]

*Decided April 11, 1973.*

The cause was submitted on briefs to MORTON, MOYLAN and SCANLAN, JJ.

Submitted by *Thomas A. Rymer, Assigned Public Defender,* for appellant.

Submitted by *Francis B. Burch, Attorney General, Mary Elizabeth Kurz, Assistant Attorney General,* and *Warren F. Sengstack, State's Attorney for Calvert County,* for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Ricci Edward Schmidt, was convicted in the Circuit Court for Calvert County by a jury, presided over by Judge Roscoe H. Parker, of possession of marijuana in sufficient quantity to indicate an intent to distribute.

The appeal is taken from the trial court's denial of the appellant's Motion to Suppress the physical evidence. The entire case rises or falls on the legitimacy of the search of the automobile which the appellant was operating. The search revealed twelve "nickle bags" of marijuana under the driver's seat.

The search was executed by Corporal Roland Hayman of the Maryland State Police at approximately 2:40 a.m. on March 11, 1972. The search was not based upon a warrant but only upon probable cause. The corporal's

belief was based predominantly on information he had received earlier that day from a confidential informant.

The informant told Corporal Hayman that he had made a direct purchase of marijuana from the appellant on the preceding day, March 9. He turned over to the corporal the marijuana which he had purchased. The informant told Corporal Hayman that on that very night, at approximately 10 p.m., the appellant and two other persons would drive a 1971 Ford Pinto with Maryland tags JJ 7967 north out of Calvert County on Route 4. He indicated that the appellant would proceed to either Baltimore or Washington to pick up a quantity of marijuana and would return to Calvert County at approximately 2 a.m. The informant spoke from direct personal knowledge. The "basis of knowledge" test under *Aguilar v. Texas,* 378 U. S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723, was met. *Dawson v. State,* 14 Md. App. 18, 284 A. 2d 861.

Nor are we troubled by the "credibility" aspect of *Aguilar's* two-pronged test. At first blush, the direct testimony of Corporal Hayman on the question of inherent credibility appeared woefully short:

> ". . . Earlier that day I received information from a reliable informant whom I had had dealings with before. This person works in Calvert County and he had given me information in the past. Information he had given me in the past involved narcotics. Information he gave me in the past I never made an arrest from, I have tried to verify his information through other informants and my own observations. This information he has given me in the past I have proved to be correct by talking to other informants and by an observation I made of a residence in this county."

In substance, it boiled down to the single sentence:

> "This information he has given me in the

past I have proved to be correct by talking to other informants and by an observation I made of a residence in this county."

More extensive examination revealed that the informant had furnished information on only two prior occasions—in November, 1971, and in March, 1972. The information on each occasion was simply that there was going to be a party at which marijuana and other narcotic drugs would be used. The so-called reliability of the first information furnished was predicated exclusively upon Corporal Hayman's testimony that he "checked and contacted other informants who had been truthful and reliable in the past, got information from them and verified what this gentleman was telling me." No detail was given to flesh out this conclusory assertion. Nothing was furnished to establish any credibility at all in the "verifying" informants. The ostensible verification of the second information furnished consisted of Corporal Hayman's personal observation that a "party" was, indeed, in progress. Nothing more suspicious than that was observed. In terms of internal credibility, this is patently a case of *Ex Nihilo nihil fit.*[1] It is palpably deficient.

If the State had been relying upon the typical police informant,[2] drawn from the criminal milieu, the showing of credibility would have been deficient. Significantly, however, it was developed that the informant was not from the criminal milieu. He was an undercover man employed by the Pinkerton Detective Agency. The strictures of *Aguilar* and of *Spinelli v. United States,* 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637, are not aimed at this class of informants. *King v. State,* 16 Md. App. 546, 298 A. 2d 446; *Thompson v. State,* 16 Md. App. 560, 298 A. 2d 458. The distinction here is the one of which we spoke in *Dawson, supra,* at 33:

---

1. From nothing, nothing comes.
2. For an excellent discussion of the classes of police informers and their character, see *Nutter v. State,* 8 Md. App. 635, at 637, n. 1, 262 A. 2d 80.

"Although the difference is discussed expressly only in the dissenting opinion of Justice Harlan in *Harris,* at 29 L.Ed.2d 743, it is implicit in the Supreme Court's treating of *Aguilar-Spinelli* problems that the rules set out for establishing an informant's credibility are aimed primarily at unnamed police 'informers' rather than at that broad class of secondary sources who are the victims of crime, the disinterested witnesses of crime, other disinterested civilian sources of information or other law enforcement officers. The members of this broad class are generally, but not universally, named. They are not from the criminal milieu."

The inappropriateness of applying *Aguilar-Spinelli* standards, in terms of a necessity of showing demonstrated past performance, was made clear in *United States v. Ventresca,* 380 U. S. 102, 85 S. Ct. 741, 13 L.Ed.2d 684, where the Supreme Court said flatly at 380 U. S. 111, that since IRS investigators are presumed truthful, a statement that information came from IRS investigators satisfied the reliability test. In *Ventresca,* similar reliability was imputed to investigators attached to the Alcohol and Tobacco Tax Division, even though such investigators were never identified by proper name. *Ventresca,* 380 U. S., at 103. See also *Rugendorf v. United States,* 376 U. S. 528, 84 S. Ct. 825, 11 L.Ed.2d 887, and *Whiteley v. Warden,* 401 U. S. 560, 91 S. Ct. 1031, 28 L.Ed.2d 306, for similar holdings with respect to other law enforcement officers.

The limitation on *Aguilar* and *Spinelli's* healthy skepticism, when dealing with police informers from the underworld milieu, is not restricted to members of official, law enforcement agencies, but extends to a wide variety of disinterested persons. *Jones v. State,* 242 Md. 95, 100-101, 218 A. 2d 7; *Taylor v. State,* 238 Md. 424, 429-431, 209 A. 2d 595; *Evans v. State,* 11 Md. App. 451, 455-459, 274 A. 2d 653; *Ward v. State,* 9 Md. App. 583, 590-592, 267 A. 2d 255; *Knight v. State,* 7 Md. App.

282, 285-286, 254 A. 2d 379; *Edwards v. State,* 7 Md. App. 108, 112, n. 1, 253 A. 2d 764; *Grimm v. State,* 6 Md. App. 321, 326-328, 251 A. 2d 230; *Boone v. State,* 2 Md. App. 80, 93, 233 A. 2d 476.

Upon our constitutionally mandated, independent review, we are persuaded that the informant's status as an undercover agent employed by the Pinkerton Detective Agency adequately established his "credibility".

Both prongs of *Aguilar* having been satisfied, the information from the informant was properly received. That information mounted up to probable cause to believe that the appellant's automobile, upon its reentry into Calvert County during the early morning hours of March 11, would contain contraband. That being the only challenge the appellant makes to the automobile search, we find nothing invalid in the search.

*Judgment affirmed.*