545 P.2d 475

STATE of Idaho, Plaintiff-Respondent,

v.

Jose Luis OROPEZA and Gail Ann Oropeza, Defendants-Appellants.

No. 11542.

Supreme Court of Idaho.

Jan. 12, 1976.

388

Richard S. Udell of Derr, Derr, Walters & Cantrill, Boise, for defendants-appellants.

W. Anthony Park, Atty. Gen., Lynn Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

McQUADE, Chief Justice.

Defendants-appellants Jose Luis Oropeza and Gail Ann Oropeza were found guilty of unlawful possession of a controlled substance (heroin) in violation of I.C. § 37–2732(c)(1) after a jury trial. We reverse the judgment of conviction, finding that appellants' motion to suppress evidence should have been granted by the district court.

On May 5, 1973, Sergeant Gary Twedt of the Canyon County City-County Narcotics Division, appeared before a magistrate and filed an Affidavit for Search Warrant. Twedt swore to personal knowledge that:

(1) on that day a state narcotics agent had purchased heroin from an individual known to have obtained the narcotic from person or persons unknown at a particularly described residence; and,

(2) a police surveillance corroborated the transaction.

A warrant was issued authorizing the search of that particularly-described residence, and all adult persons and motor vehicles found on the premises. The next day, May 6, law enforcement officers undertook surveillance of the premises in anticipation of executing the search warrant. When it appeared that appellants were about to depart in a motor van with materials taken from the house, plain-clothes officers entered the property where the

van was parked and attempted to stop them. One law enforcement officer of the Federal Bureau of Narcotics and Dangerous Drugs, waved his badge and drew his weapon. Jose Oropeza placed the van in reverse, accelerated, and after hitting a propane tank, came to a stop while still on the premises. The appellants were placed under arrest. They were removed from the vehicle and searched. The vehicle was then searched. A canister containing heroin was found in the glove compartment of the van. During their arraignment, the district court denied appellants' motion to suppress the heroin. Appellants' second motion to suppress was denied immediately before trial.

Appellants make three assignments of error. The first assignment deals with the district court's denial of their motions to suppress the evidence. The court below erred in refusing to suppress the heroin evidence found in the van. Our reversal on this ground is dispositive of the appeal.

Appellants' claim of illegal search and seizure is based on the fundamental guarantee that the people are to be protected from unreasonable searches and seizures. The Fourth Amendment to the United States Constitution provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article 1, Section 17, of the Idaho Constitution is similar.[1]

We must determine if the search which disclosed the heroin was conducted in vio-

lation of appellants' federal and state constitutional rights to be secure from unreasonable searches and seizures. If so, the evidence must be suppressed, the judgment of conviction reversed, and the case remanded for possible further proceedings. First, we must determine if the search was conducted under a valid search warrant.

Sergeant Twedt's affidavit filed to support the application for issuance of the search warrant read, in relevant part:

'* * * That he is the duly appointed, qualified and acting peace officer within the County of Canyon, State of Idaho, and that he has reasons to believe that certain (2) Controlled Substances, including, but not limited to, Marihuana, Heroin, Amphetamines, and Lysergic Acid Diethylamid are unlawfully being held at the residence; (3) located on old Highway 95 between Wilder and Homedale, located Three-Tenths mile North of the Homedale Bridge on the East side of the road, a pink and white cinder block-single story building with a green roof, in Canyon County, Idaho, and all motor vehicles present, all rooms, spaces, closets, cupboards, containers, boxes, packages, waste paper baskets, drawers, beds, outbuildings, cellars, and the persons of all adults present and the grounds thereof.

That he has probable cause to believe and is positive the same is true because of the following facts, of which he has personal knowledge:

(4) That on May 5th, 1973, an Agent of the Idaho Bureau of Narcotics and Drug Enforcement, an Agency of the Idaho Attorney General's Office, made a purchase of a quantity of Heroin from an individual who is known to have acquired the said Heroin from person or

---

1. Art. 1, § 17, Idaho Const.: "*Unreasonable searches and seizures prohibited.* The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particu-

larly describing the place to be searched and the person or thing to be seized." This provisions is "substantially the same as (that) of the United States Constitution.": *State v. Peterson*, 81 Idaho 233, 236, 340 P.2d 444, 446 (1959). *Accord, State v. Arregui*, 44 Idaho 43, 254 P. 788 (1927).

persons unknown at the above described residence.

(5) That surveillance conducted by officers of the City-County Narcotics Division established the above facts to be true.

(6) That a field test of the above described Heroin was conducted by the investigating officers, and said test showed positive indication of an Opiate being present in said substance.

(7) Wherefore, your affiant prays that a search warrant allowing the search of the above described residence . . . and all motor vehicles present, all rooms, spaces, closets, cupboards, containers, boxes, packages, wastepaper baskets, drawers, beds, outbuildings, cellars, and the persons of all adults present and the grounds thereof, be issued by this Court."

The magistrate concluded that the above affidavit provided probable cause to believe the above enumerated controlled substances were being held at the described residence and issued a warrant authorizing a search of " . . . all motor vehicles present, all rooms, spaces, closets, cupboards, containers, boxes, packages, wastepaper baskets, drawers, beds, outbuildings, cellars, and the persons of all adults present and the grounds of the said . . . residence . . . "

The instant warrant is to be tested by constitutional standards announced by this State and it must also be in accord with Rule 41 of the Idaho Rules of Criminal Practice and Procedure pertaining to search and seizure. That rule provides in relevant part:

"(c) ISSUANCE AND CONTENT. A warrant shall issue only on an affidavit or affidavits sworn to before a district judge or magistrate or by testimony under oath and recorded and establishing the grounds for issuing a warrant. If the district judge or magistrate is satisfied that grounds for the application exist, or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. *The finding of probable cause shall be based upon substantial evidence, which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is factual basis for the information furnished.* (emphasis added)."

■ This rule codifies certain standards necessary for the issuance of a valid search warrant. Affidavit(s)—or, alternatively, recorded testimony—*must* be presented to the magistrate which sets forth the *facts* which the affiant believes establishes probable cause.[2] It is from the facts contained in the affidavit—which may include a recorded examination of the affiant and his witnesses under oath—that the neutral and detached magistrate makes his independent evaluation as to whether probable cause exists. Furthermore, the rule provides that probable cause may be based on hearsay evidence,[3] and incorporates the two-pronged test established in *Aguilar v. Texas*[4] and *Spinelli v. United*

---

2. *See* I.C. §§ 19–4403 and 19–4405; *State v. Constanzo*, 76 Idaho 19, 276 P.2d 959 (1954); *People v. Padilla*, 182 Colo. 101, 511 P.2d 480 (1973).

3. *See United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

4. 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, 729 (1964). "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, . . . was 'credible' or his information 'reliable'." Citations omitted.

*States,*[5] to measure the sufficiency of such hearsay evidence. In *State v. O'Bryan,*[6] this Court explained the *Aguilar-Spinelli* requirements:

> "Therein, the United States Supreme Court established constitutional guidelines for measuring hearsay information in a probable cause setting. The credibility test which has become known as the 'veracity' prong requires a showing of knowledge of some of the underlying circumstances which lead to the conclusion that the informant is credible or his information reliable. The second test, known as the 'basis of knowledge' prong, requires a showing of knowledge of some of the underlying circumstances upon which the informant based his conclusion."

■ The magistrate must find probable cause to support the issuance of the search warrant. The quantum of information which constitutes probable cause sufficient to justify issuance of a search warrant must be measured by the facts of the particular case.[7] We acknowledge that ". . . affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion."[8] The issuing magistrate's determination ". . . of probable cause should be paid great deference by reviewing courts . . . ."[9]

Taking the above rules of law into consideration, we have examined Detective Twedt's affidavit for a search warrant.

We hold that the statements contained therein were insufficient to establish probable cause for the issuance of the search warrant. Twedt swore to personal knowledge that on a specific day, an agent of the state Bureau of Narcotics and Drug Enforcement made a *purchase* of a quantity of heroin from an unnamed person who was "known" to have acquired the heroin from person or persons unknown at the Oropeza residence and that a police surveillance ". . . established the above facts to be true."

■ The affidavit indicates the use of hearsay upon hearsay to establish probable cause. In certain exceptional instances, an affidavit containing such hearsay on hearsay will withstand attack.[10] To do so, *facts* indicating: (1) The reliability of the initial source and the sufficiency of the supporting circumstances as to the existence of probable cause; and (2) The reliability of the source of the information to the affiant, must be placed in the affidavit so that the magistrate may make his determination of probable cause.[11] Not only must facts be set forth in the affidavit indicating the reliability of the affiant's source, a state narcotics agent, but facts must be set forth to test the reliability and credibility of the source of the affiant's source, *i.e.,* the *unnamed* individual who allegedly secured the heroin at the Oropeza residence. The affidavit fails to set forth facts relating to reliability of this unnamed person.

---

5. 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

6. 96 Idaho 548, 531 P.2d 1193, 1197 (1975).

7. *Cf. Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) ; *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

8. *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965).

9. *Spinelli v. United States, supra* n. 5, 393 U.S. at 419, 89 S.Ct. at 591, 21 L.Ed.2d at 645.

10. *See People v. Cohn,* 30 Cal.App.3d 738, 106 Cal.Rptr. 579 (1st Dist.1973) ; *United States v. Roth,* 391 F.2d 507 (7th Cir. 1967). *But cf. Madden v. State,* Ind., 328 N.E.2d 727 (1975).

11. *See United States v. Smith,* 462 F.2d 456 (8th Cir. 1972) ; *United States v. Carney,* 328 F.Supp. 948 (Del.1971), affmd. 455 F.2d 925, (3rd Cir. 1972) ; *United States v. McCoy,* 478 F.2d 176 (10th Cir. 1973), cert. den., 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62 (1973) ; *United States v. Fiorella,* 468 F.2d 688 (2nd Cir. 1972), cert. den., 417 U.S. 917, 94 S.Ct. 2622, 41 L.Ed.2d 222 (1974), reh. den., 419 U.S. 885, 95 S.Ct. 156, 42 L.Ed.2d 128 (1975) ; *United States v. Carmichael,* 489 F.2d 983 (7th Cir. 1973).

■ We find no specification in the affidavit as to a date or period of time during which the transaction at the Oropeza residence between person or persons unknown and the unnamed person selling the drug to the narcotics agent took place; nor, can we draw any justifiable inference as to a specific time from the facts contained in the affidavit. An affidavit must provide facts sufficient to create probable cause for the belief that the forbidden articles are within the place to be searched at the time the search warrant is requested. The sufficiency of proof necessary to create such probable cause may vary depending upon the facts of the case and the particular nature of the article(s) to be seized. In the instant case, dealing as we are with dangerous drugs, and the possibility of a search of a residence together with all persons and vehicles therein located, some particularity as to time must be made so as to enable the magistrate to make his determination of *present* probable cause for the issuance of the search warrant. The instant affidavit did not comport with this requirement.[12]

Because the motion to suppress was improperly denied, the judgment of conviction is *reversed* and the case is *remanded* for further proceedings.

DONALDSON, and BAKES, JJ., concur.

SHEPARD, Justice (dissenting).

This case involves trafficking in heroin. Appellants were arrested, tried and convicted of the crime of possession of heroin and although the majority remands the cause for further proceedings, it has effectively prevented further proceedings by requiring suppression of the heroin.

I would hold that exigent circumstances validated the search pursuant to an arrest. Federal, state and local law enforcement officers had conducted surveillance of the premises in question here; had made a

purchase of a substance known to have been acquired from the premises in question here; analysis had indicated said substance to be heroin; for some hours prior to the search law enforcement officers had observed the appellants and others loading what appeared to be all of their personal belongings into a motor vehicle; they observed the appellants together with all of their personal belongings and their children starting to depart from the premises; they ran toward the departing vehicle displaying and shouting of their authority as law enforcement officers and demanding that the appellants stop; the appellants attempted to flee; one of the officers noted one of the appellants bending down toward what he suspected might be the location of a weapon; after the stop and removal of the appellants and others from the vehicle, the officers searched that particular area of the vehicle (the glove compartment) and found therein a fully loaded 9mm Fabrique Nationale automatic pistol together with a canister containing 31 individual containers of heroin and $731 in cash; the quality of the heroin was at a concentration of 13.7%. In my opinion the record is clear that the federal, state and local law enforcement officers had probable cause to believe that trafficking in, and possession of, heroin was taking place at the premises in question.

In my judgment the arrest and the contemporaneous search of the automobile was not in violation of Fourth Amendment rights and the trial court's denial of the appellants' motion to suppress was correct and should be affirmed. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; *Scher v. United States,* 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151; *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. See also the remarkably similar recent case of *State of Nebraska v. Patterson,* 192 Neb. 308, 220 N.W.2d 235 (1974);

12. *See People v. Padilla,* 182 Colo. 101, 511 P.2d 480 (1973); *Webb. v. Commonwealth,* 339 S.W.2d 177 (Ky.1960).

and *People v. Williams,* 541 P.2d 76 (Colo. 1975); *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *State v. LeBlanc,* 347 A.2d 590 (Me.1975).

The sole basis of the majority decision herein is the asserted insufficiency of the affidavit upon which the search warrant was issued. The majority purports to examine the affidavit and conclude "the affidavit indicates the use of hearsay upon hearsay to establish probable cause." In my judgment, such is an unnecessary and unwarranted inference and is contrary to the specific terms of the affidavit. No "informer" is mentioned nor is it indicated that the knowledge of the affiant came from any source other than his personal knowledge or police surveillance. The majority tells us, however, that we must assume the existence of certain facts and no others, must tax the issuing magistrate with its interpretation of the facts and then proceed to hold his decision erroneous because he could have only interpreted the affidavit as does the majority. I disagree. An equally fair interpretation of the affidavit might be that a law enforcement officer (perhaps Twedt himself) accompanied an unnamed person and saw him procure a substance from persons at the residence in question, thereafter purchased the substance, had it tested and found it to be heroin. If a police officer did accompany an unknown person into the residence to procure the heroin, perhaps the officer was wired for sound and the transaction was heard at a distance by other officers. There are any number of possibilities.

Having established that "hearsay" and an "informant" present probable cause problems in the instant case, the majority then uses the authority of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) as authority for holding that the instant affidavit did not present the magistrate with probable cause. In *Aguilar* the affidavit for the search warrant stated

only "affiants have received reliable information from a credible person and do believe that (narcotics) are being kept at the above described premises . . ." In *Spinelli* the affidavit stated that the FBI "has been informed by a confidential, reliable informant that William Spinelli is operating a handbook and accepting wagers and disseminating wagering information by means of the telephones . . ." Thus, it is clear in both *Aguilar* and *Spinelli* that the very language of those affidavits indicated that the affiant's knowledge was based solely on hearsay information received from an informant.

It is clear that hearsay information received from an informer may furnish sufficient probable cause for the issuance of a warrant. *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Varon, Searches, Seizures and Immunities (2nd ed. 1974) Assuming that *Aguilar* and *Spinelli* maintain vitality following *Harris* (See 40 Fordham Law Review, 687), the only teaching of those cases is that hearsay information supplied by an informer must be more than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation. Statements regarding the reliability of an informer must be more than merely conclusory in nature, *Spinelli,* and these must set forth such underlying circumstances as are necessary to judge the validity of the informer's conclusion, *Aguilar.*

I find nothing in any of the decisions of the U.S. Supreme Court which requires the affidavit at issue here to be determined insufficient as showing probable cause. In *Jones v. United States, supra,* an affidavit for a search warrant indicated the receipt of information by an unnamed person. There it was held that although the affidavit did not set out affiant's personal observations (as contrasted with the assertion of personal knowledge here), nevertheless

other sources (here, police surveillance) provided a substantial basis for crediting the hearsay. In *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), an affidavit for a search warrant indicated the receipt of hearsay information but such was deemed sufficient because of the strong factual background which buttressed the hearsay and combined to establish probable cause. Some commentators argue that the opinion of the court in *United States v. Harris, supra,* has to some extent blunted the decisions in *Aguilar* and *Spinelli,* but in any event *Harris* held that an affidavit premised on information received from an unknown informer provided sufficient probable cause for the issuance of a search warrant in consideration of the totality of the circumstances which were used to evaluate an affidavit as meeting the standards for probable cause.

It is well-established that in an evaluation of an affidavit to determine the existence of probable cause great deference should be paid to the decision of the magistrate and his common sense should not be restricted. *Jones v. United States, supra; United States v. Ventresca, supra.* As was stated in *Spinelli* and reiterated in *Harris,* "A policeman's affidavit should not be judged as an entry in an essay contest." As was stated in *Aguilar,* "Thus, when a search is based upon a magistrate's rather than a police officer's determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' ibid., and will sustain the judicial determination so long as 'there was substantial basis for [the magistrate] to conclude that narcotics were probably present.'" As stated in *Ventresca,* "Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." See also *Schmidt v. State,* 17 Md. App. 492, 302 A.2d 714 (1973). As stated

by the majority opinion in *Spinelli,* "In holding as we have done, we do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, (citations) that affidavits or probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, (citations) that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, and that their determination of probable cause should be paid great deference by reviewing courts, (citations)."

As stated in *Harris,* "The Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

I would finally note that the motions made to suppress both prior to and at the time of trial are only in conclusory language, i. e., that the affidavit "was not based on personal information of said affiant." That, of course, is directly contrary to the language of the affidavit: "That he has probable cause to believe and is positive the same is true because of the following facts, *of which he has personal knowledge."* The motion further states, "Said affidavit is based on hearsay evidence obtained by said affiant and the source or reliability of affiant's information is not revealed or established." As

previously noted, the affidavit contains no reference to any information received from any other person whatsoever. That is merely an unnecessary inference drawn by the appellant and, of course, by the majority opinion herein. Further, insofar as the record reveals, no evidentiary hearing was either requested or conducted upon appellants' motion to suppress.

As stated in *State v. Holt*, 415 S.W.2d 761 (Mo.1967), "Not only must defendant file a motion to suppress the controverted evidence, but he has the burden of presenting evidence to sustain his contentions." See also *State v. Gardner*, 77 Mont. 8, 249 P. 574 (1926); *People v. Robinson*, 344 Mich. 353, 74 N.W.2d 41 (1955); *People v. Ferguson*, 376 Mich. 90, 135 N.W.2d 357 (1965); *Alderman v. U. S.*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Modern Criminal Practice, Hall et al, 1969, Chapter 12 at p. 704.

Aside from differences which are irrelevant here (such as the combination of the motion to suppress with one for the return of illegally seized property and the proper timing of a motion to suppress), there is no substantial difference between the Idaho and federal rules of criminal procedure in area of motions to suppress. Evidentiary hearings upon motions to suppress are widely utilized. *Chin Kay v. U.S.*, 311 F. 2d 317 (9th Cir. 1962); *U. S. v. Lyon*, 397 F.2d 505 (7th Cir. 1968); *Batten v. U. S.*, 188 F.2d 75 (5th Cir. 1951). For additional cases on defendant's burden of presenting evidence to sustain his motion to suppress see *State v. Kolberstein*, 8 Or.App. 307, 493 P.2d 176 (1972); *Ortega v. Texas*, Tex.Cr.App., 464 S.W.2d 876 (1971); *State v. Wright*, 11 Or.App. 560, 503 P.2d 514 (1972); *Carter v. State*, 274 Md. 411, 337 A.2d 415 (1975).

To summarize, I would hold first that the exigent circumstances here validated the search of the motor vehicle incident to a lawful arrest for which probable cause existed. Also, I would further hold that the affidavit on its face indicated the existence of probable cause justifying the issuance of the search warrant and appellants bore the burden of proving the illegality of the search by evidence at least placing in issue the assertions contained in the affidavit.

The essence of my disagreement with the result obtained by the majority herein is perhaps best expressed in the words of Hugo Black and Felix Frankfurter. In a dissent in *Stewart v. United States*, 366 U.S. 1, 21, 81 S.Ct. 941, 954, 6 L.Ed.2d 84 (1961), Mr. Justice Frankfurter stated:

"When a court of highest authority in this country thus interposes a bare technicality between a defendant and his just conviction, it is not too much to charge some of the laxity in our administration of the criminal law to a proneness on the part of courts of last resort to find error and to reverse judgments of conviction."

In *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 570, 91 S.Ct. 1031, 1038, 28 L.Ed.2d 306 (1971), Mr. Justice Black dissenting said:

"With all respect to my Brethren who agree to the judgment and opinion of the Court, I am constrained to say that I believe the decision here is a gross and wholly indefensible miscarriage of justice. For this reason it may be classified as one of those calculated to make many good people believe our Court actually enjoys frustrating justice by unnecessarily turning professional criminals loose to prey upon society with impunity."

Believing that the case at bar falls within those strictures, I would affirm the orders of the trial court denying the motions to suppress and affirm the judgment of conviction.

McFADDEN, J., concurs.