Argued April 2, affirmed June 26, 1963

# ANDERSON *v.* GLADDEN

383 P. 2d 986

*Louise Jayne,* Portland, argued the cause and filed a brief for appellant.

*C. L. Marsters,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

GOODWIN, J.

Petitioner was convicted in 1955 of second degree murder. Judgment was affirmed on appeal. *State of Oregon v. Anderson,* 207 Or 675, 298 P2d 195, 60 ALR 2d 850 (1956). Subsequently, Anderson challenged by writ of *habeas corpus* the jurisdiction of the convicting court. Relief was denied. *Anderson v. Britton,* 212 Or 1, 318 P2d 291 (1957), cert. den. 356 US 962, 78 S Ct 999, 2 L Ed2d 1068 (1958). He now seeks under the Oregon Post-Conviction Hearing Act, ORS 138.510 to 138.680, to present additional reasons why he should have a new trial.

The essential background facts are reported in the cases cited above. It is sufficient for the present case to recall that Anderson was convicted of killing one Miller, within the boundaries of the Klamath Indian Reservation. Anderson is a member of the Klamath tribe. In *Anderson v. Britton,* he had challenged without success the jurisdiction of the state courts to try an Indian for a murder committed in Indian country.

Anderson now seeks to overturn his conviction by alleging a number of irregularities that fall under two general headings: (a) denial of equal protection, and (b) new evidence related to the merits. Denial of equal protection of the law is charged in the formation of the grand jury and petit jury. Newly discovered evidence of perjury, going to the merits of the original case, is alleged as an additional basis for a new trial. We will first consider the objections to the grand jury and to the trial jury.

Anderson alleges *inter alia*: (1) that he was discriminated against because of his race and color in that Indians were systematically excluded from the Klamath County grand jury which indicted him; (2)

that Indians were systematically excluded from the Harney County jury list (trial being had in that county upon his motion for a change of venue); and (3) the Harney County officers charged with the preparation of jury lists had not complied with ORS 10.110 to 10.160, the statutory method of selecting jurors, with the result that professional, or volunteer, jurors made up a part of the panel.

To these allegations, the state interposed a demurrer, thereby admitting, at least for a limited purpose, the three classes of alleged irregularities. The trial court sustained the demurrer with reference to the systematic exclusion of Indians from the trial jury in Harney County. The cause eventually came to trial upon certain other factual issues. These included the alleged failure of Harney County officials to comply with ORS 10.110 to 10.160 (the "professional jurors" issue). The trial court found no prejudice against Anderson resulting from the failure of the county officials strictly to follow ORS 10.110 to 10.160 in the formation of jury lists. The trial court also held that Anderson waived the irregularities, if any, in the make-up of the Klamath County grand jury when he pleaded to the indictment.

The state has argued in this court a number of defenses to the present proceeding. The first is that the objections to the grand jury and to the trial jury should have been taken in Anderson's original appeal to this court. Since they were not so taken, the state says they are barred by ORS 138.550 (2):

"When the petitioner sought and obtained direct appellate review of his conviction and sentence, no ground for relief may be asserted by petitioner in a petition for relief under ORS 138.510 to 138.680 unless such ground was not asserted and could not

reasonably have been asserted in the direct appellate review proceeding * * *." (Petitioner was represented by counsel at all material times.)

The foregoing quotation contains the statutory form of the general rule which this court followed for many years in *habeas corpus* cases prior to the adoption of the present post-conviction statute. In the petitioner's most recent appearance in this court we said "* * * that habeas corpus will not lie where an appeal was taken and the question was not raised, when if it had been raised, the remedy by appeal would have been adequate." *Anderson v. Britton,* 212 Or supra at 7.

■ With reference to his objections to the grand jury and to the trial jury, Anderson had an opportunity in his appeal to present whatever objections he thought had merit. His current petition does not allege a sufficient reason for his failure earlier to challenge these supposed irregularities. (He alleges that he has been in custody at all times since the date of the crime.) Anderson's brief asserts that he had insufficient knowledge of the facts to make known his objections to the jury at an earlier time, but his petition does not so allege. Assuming, however, that there was in fact systematic exclusion of Indians and that Anderson knew nothing of it until after his trial, it does not follow that he could not have raised the matter in his appeal.

We are not aware of any rule that excuses a person in custody from the duty to bring up in his appeal such questions as he thinks may have bearing upon the lawfulness of his conviction. His attorneys were not in custody. Any legitimate concern about the jury could have been investigated. Anderson knew there

were no Indians on his jury. The reasons for diligence in the appeal are fully set forth in *Anderson v. Britton,* supra, and need not be repeated here.

■ This case properly falls within the rule set forth in ORS 138.550 (2), and could be disposed of under that section of the code. However, the petition, briefs and arguments deal with constitutional rights which are entitled to federal[①] as well as state protection. Rather than have the petitioner contend that we have denied him his day in court, we shall consider the questions on the merits as if they had been timely presented.

■ There is no merit, however, in the belated objection to the failure of the Harney County officials to comply with ORS 10.110 et seq. in selecting jury panels. These defects do not amount to a calculated denial of equal protection of the laws. The mere fact that volunteers (professional jurors) were permitted to serve would not, therefore, present a constitutional issue. Such a defect affords no basis for post-conviction relief. *Brooks v. Gladden,* 226 Or 191, 358 P2d 1055 (1961), cert. den. 366 US 974, 81 S Ct 1942, 6 L Ed2d 1263 (1961); and see *Shotwell Mfg. Co. v. United States,* 371 US 341, 83 S Ct 448, 9 L Ed2d 357 (1963).

■■ On the race question, Anderson's petition perhaps does allege a denial of rights guaranteed by the federal constitution. Systematic exclusion from the jury of members of a defendant's race, if proven, would be a denial of equal protection of the laws. See, e.g., *Cassell v. Texas,* 339 US 282, 70 S Ct 629, 94 L Ed

---

[①] Anderson has also presented related questions in the federal court, but the disposition of those proceedings was such that the State of Oregon does not contend that the adverse rulings bar the petition in the case at bar. See Anderson v. Gladden, 188 F Supp 666 (D Or 1960), affirmed 293 F2d 463 (9th Cir 1961), cert. den. 368 US 949, 82 S Ct 390, 7 L Ed2d 344 (1961).

839 (1950) (grand jury); *Patton v. State,* 332 US 463, 68 S Ct 184, 92 L Ed 76, 1 ALR2d 1286 (1947) (grand and petit juries). See, also, annotations, 52 ALR 919, 1 ALR2d 1291, 82 L Ed 1053, 94 L Ed 856, and 97 L Ed 1249. The trial court may have been of the opinion that the petition did not allege facts which, if proven (or admitted), would show a calculated system of racial prejudice resulting in a denial of equal protection. In the alternative, the trial court may have deemed the objections as waived. Both theories are discussed in the colloquy. The record does not reveal the basis for the trial court's ruling as clearly as it might have. If the ruling was correct on either basis, however, it is our duty to affirm.

 In testing upon demurrer the allegations of racial prejudice in Harney County upon demurrer, we have to assume their truth. Anderson's petition alleged that there were many qualified Indians in Harney County, and that none had ever served on any jury. Anderson then concluded that systematic exclusion existed. If we are permitted to speculate that systematic exclusion was the only possible explanation for such a state of affairs, the petition does not say who excluded the Indians. A separate affidavit says that such exclusion was practiced by the county clerk, and was based on racial grounds. The petition, however, alleged no such facts. The most that can be said for the pleading is that it contained a conclusion which, since there was no motion to make it more specific, might have justified the admission of evidence to prove it. We will treat the pleading, although not artfully drawn, as sufficient against a demurrer in a case in which liberty is at stake. Such a petition, therefore, ordinarily would require an answer and the taking of testimony. In the case at bar, however, the petition incorporated

by reference such public records as to make the petition manifestly contradictory, if not, indeed, frivolous with reference to Harney County.

The trial court was entitled to take judicial notice of the federal decennial census most nearly relevant to the case at bar (1950 or 1960). The census for 1950 had been incorporated by Anderson in his pleadings. It is not significantly different from that of 1960. The 1960 census for Harney County reveals the following racial distribution: white, 6558; negro, 6; all others (not further classified), 180. Of the 180 persons not otherwise classified, the court can only speculate how many were members of any particular race. Some undisclosed number may have been members of an American Indian nation, Klamath or otherwise. We can assume that some Indians did, in fact, reside in Harney County. We have no way of knowing how many. Common knowledge, however, would supply an inference that not all the Indians would be adults, or registered voters, or, if not voters, otherwise available to serve as jurors, i.e., by reason of having their names enrolled on the tax rolls so that they might be drawn in the ordinary course of events. If less than half of the general population were registered voters, it may be assumed that the Indian population, whatever it was, would not be likely to furnish a greater proportion of registered voters, and hence jurors, in any event. The petitioner's evidence showed 3,087 voters in Harney County in 1958. Even if we were to speculate that as many as 80 or 90 of the voters were Indians, there is no reason to believe that the ordinary probabilities had ever been tampered with. Mathematically, the odds would seem to be against a juror of a given nonwhite race being drawn in a given term of court. Jurors were not frequently drawn because

there was little demand for them. In 1955 there were eight criminal trials in the county.

On the score of systematic exclusion of a particular race, while the bald assertion thereof in the pleading ordinarily might state grounds for relief, it cannot do so in this case where it is so patently contrary to common sense. It might have been better practice to permit the petitioner to put on whatever proof he might have had, but the facts to be proven were so implausible that we do not think it was reversible error for the trial court to sustain the demurrer and put an end to an obvious exercise in futility.

■■■■ We are likewise satisfied that Anderson's petition concerning the failure of Klamath County officials to put Klamath tribesmen on the grand jury in that county was properly disregarded. The truth of the assertion is assumed. Anderson alleged that he suffered prejudice because no Klamath Indians had ever served on the grand jury. We do not need to decide whether a racial bias could have accounted for the fact that Klamath tribesmen did not serve on local juries. The trial court held that if there was a calculated systematic exclusion of grand jurors on racial grounds the objection was waived when Anderson pleaded to the indictment. Since the indictment itself can be waived, there is no reason to hold that objections to the grand jury cannot also be waived.

In considering whether Anderson waived his objections to the grand jury, there are considerations which suggest with equal force a waiver of objections to the trial jury. We take into account the following facts which appear in the record or are matters of judicial knowledge: Anderson has been represented by counsel at all material times. The trial had been history for several years before it occurred to Anderson to make

any of his present objections to the juries. Anderson and his counsel at the time of trial knew as much about the ethnic and racial composition of the population in the relatively sparsely populated counties here involved as they know now. Anderson's concern about the publicity attending the crime prompted him to move for a change of venue to Harney County. The record does not suggest that his misgivings about a fair trial in Klamath County in 1954 had anything to do with the fact that there were then no Indians on the grand jury. At the time the venue was changed to Harney County, Anderson employed a Harney County lawyer to assist his other counsel. The attorney had adequate time prior to trial to investigate the composition of the jury if anyone thought it was important. There was also time in which to institute proceedings that would compel the lawful drawing of a panel of jurors in that county. We are satisfied from the record before the court that, if Anderson ever had any legitimate objection to the grand jury, he waived it when he entered his plea. Likewise, if he had a valid objection to the trial jury, he waived it when he announced that he was ready for trial. The fact that a given right is protected by the constitution does not mean that it cannot be waived. *State v. Henderson,* 182 Or 147, 199, 184 P2d 392, 186 P2d 519 (1947).

In *Garner v. Alexander,* 167 Or 670, 120 P2d 238 (1941), cert. den. 316 US 690, 62 S Ct 1281, 86 L Ed 1761 (1942), we held that the alleged discrimination in excluding women from the jury panel could not be reached by *habeas corpus.* We did not hold that there was no remedy. It is manifest that, upon proper application to the circuit court, mandamus will lie to compel performance by the officers charged with statutory

duties in providing juries. *State ex rel Venn v. Reid,* 207 Or 617, 298 P2d 990 (1956) (mandamus denied, but only because brought against wrong officer). Timeliness is not simply a matter of convenience. If an accused seriously believes that his defense will be prejudiced because of the composition of the jury, he, or his counsel, should seek correction before, rather than after, testing the panel by its verdict.

We need not decide in this case whether, in other circumstances, some other state of affairs may militate against waiver. We hold that upon the facts alleged in this case, and upon the record brought to this court, the petitioner has not shown a valid reason for his failure to make timely protest if there was an element of racial prejudice in his original prosecution. We do not, of course, express any view on the truth of the allegations. The assignments of error relating to the several objections to the juries are without merit.

 In addition to his challenge of the petit and grand juries, Anderson contends that he is entitled to another trial because of newly discovered evidence that there was perjury in his first trial. A convict in another prison, one Garcia, has made equivocal affidavits that tend to cast some doubt on testimony he gave for the state in Anderson's original trial. The affidavits do not, however, suggest that Anderson did not kill Miller, or that some other person did. The most that can be said for the affidavits is that Garcia either lied when he said at Anderson's trial that he saw Anderson kill Miller, or he is lying now when he says he did not see Anderson kill Miller.

As a general rule, *habeas corpus* (or its statutory counterpart in post-conviction proceedings) does not provide relief from a conviction resulting from a mistake of fact, where proof of the jury's mistake must

depend upon the credibility of newly discovered evidence. See *Shaver v. Ellis,* 255 F2d 509 (5th Cir 1958).

The prospect of a court holding itself powerless to remedy a manifestly erroneous conviction obviously would not adorn the administration of justice. We do not, therefore, say that executive clemency is the only remedy available when newly discovered evidence proves the innocence of a prisoner. That hypothetical state of affairs, however, is not now before us. We leave open the question whether newly discovered evidence can ever give rise to any kind of common-law post-conviction judicial relief. *Cf.* Collins and Neil in 39 Or L Rev at 346-347, where it is suggested that further legislation might be necessary in order to provide a remedy within the framework of our present statutory post-conviction procedure.

In the case at bar, the credibility of the witness now claimed by Anderson to have been a perjurer was one of the contested issues during Anderson's trial. The issue was explored again on the original appeal. The situation Anderson now faces is one that has been known to him from the time he was indicted. If there ever was perjury in his case, Anderson necessarily would have known it. If such prejury was on the state's side of the case, Anderson should have made a timely motion for a new trial, or for additional time to obtain his proof, if time was needed for that purpose. ORS 136.850; 17.610.

With reference to the affidavits and the witnesses who appeared on the merits in the proceeding below, the trial court was satisfied that the so-called newly discovered evidence did not create a right to relief in a post-conviction hearing. We conclude that the trial court committed no error when it found the affidavits inadequate in fact to afford grounds for

relief. It is not necessary to decide, therefore, what sort of relief might lie if there were convincing evidence that an innocent person wrongfully had been imprisoned.

■ Anderson has made a final assignment of error based upon the fact that he did not have a preliminary hearing before he was indicted by the Klamath County grand jury. The assignment is without merit. The grand jury may indict a person it believes to be guilty of crime whether or not that person has been held to answer. ORS 132.380; *Anderson ex rel Poe v. Gladden*, 205 Or 538, 280 P2d 823 (1955), cert. den. 350 US 974, 76 S Ct 451, 100 L Ed 845 (1956).

We conclude that the trial court had an adequate basis for finding the petitioner's assertions of fact to be unsupported by proof. As noted, the trial court was free from error in its rulings on the law.

Affirmed.

O'CONNELL, J., specially concurring.

I concur in the result. I do not agree with that part of the majority opinion which holds that "if Anderson ever had any legitimate objection to the grand jury, he waived it when he entered his plea. Likewise, if he had a valid objection to the trial jury, he waived it when he announced that he was ready for trial." One does not waive his rights unless he knows or has reason to know that he has such rights.

The petition in the present case alleged "That it was only after petitioner's conviction and an investigation by his trial attorneys, Mr. Herbert P. Welch, Mr. Robert L. Welch, and Mr. Leonard H. Waterman, into the composition of the Harney County jury lists that the first Indian to serve on a Harney County jury was called on a special panel on September 28, 1955." It

would appear from this assertion that petitioner did not know of the systematic exclusion of Indians from the jury until after his conviction. There is nothing to suggest that prior to that time he should have suspected official misconduct in the preparation of the jury list.

However, the objection now raised by petitioner could have been raised in the previous post-conviction proceeding, i.e., the habeas corpus proceeding brought in June, 1956. Under such circumstances ORS 138.550 (3) is controlling and petitioner is deemed to have waived his objection by failing to present it in the previous proceeding.①

It is possible that under *Fay v. Noia,* 83 Sup Ct 822, 9 L Ed2d 837 (1963) the writ of habeas corpus is still available to petitioner in the federal courts, but I do not think that this should concern us. By the enactment of ORS 138.550 the legislative assembly has expressed the policy of this state with respect to the application of the principle of res judicata in post-conviction proceedings. Under that statute habeas corpus is not available to a petitioner who could have raised the question of due process in a previous post-conviction proceeding. That is a salutary rule. If the United States Supreme Court feels differ-

---

① ORS 138.550 (3) provides:

"(3) All grounds for relief claimed by petitioner in a petition pursuant to ORS 138.510 to 138.680 must be asserted in his original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition. However, any prior petition or amended petition which was withdrawn prior to the entry of judgment by leave of the court, as provided in ORS 138.610, shall have no effect on petitioner's right to bring a subsequent petition."

ently, it is privileged to open the federal courts to provide additional relief. But we are not required to make our procedure conform to that policy.

DENECKE, J., concurs in this opinion.