Argued December 6, affirmed December 30, 1966

# STATE OF OREGON *v.* GERALD CLAYTON SANFORD

421 P. 2d 988

*Frank P. Santos,* Oregon City, argued the cause and filed the brief for appellant.

*Roger N. Rook,* District Attorney, Oregon City, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

HOLMAN, J.

The defendant has appealed from a judgment of conviction of the crime of burglary in a dwelling house after a trial by the court without a jury. The residence burglarized was that of the operator of the "Top O Scott Golf Course."

Defendant contends the court erred in denying his motion to suppress evidence. The evidence was taken from defendant's apartment under a search warrant. Defendant contends, however, that information concerning the presence of the evidence in the apartment was acquired as the result of a previous illegal search of the apartment without a warrant and that

this invalidates the subsequent search and seizure under the warrant.

The motion to suppress did not specify any particular evidence which defendant desired suppressed. It stated "* * * moves the court to suppress the evidence obtained as a result of the illegal entry and search of defendant's home, * * *." The hearing on the motion to suppress disclosed that two City of Portland detectives were sent to the apartment house in which defendant lived pursuant to a call to the police by the apartment house manager. The manager told police a sum of money had been stolen from him and that defendant had been seen displaying a large and unusual amount of money. Together with the manager, the detectives went to the defendant's apartment and knocked on the door. There was no response. The detectives found a money wrapper which had written on it "Top O Scott Golf Course" lying on the hallway floor adjacent to the door to defendant's apartment. They then looked in a window of the apartment from a common passageway and saw another money wrapper on the floor of the apartment. They could not read the legend upon it but it appeared similar to the one found in the hallway. They then went back and again knocked at the door and again received no response. The manager then let them into defendant's apartment with his manager's pass key. The officers searched the apartment for the stated purpose of looking for defendant. They looked at the money wrapper which was on the floor of the apartment and found that it bore the same markings as the one found in the hall. They observed a plastic bag in a closet which they did not open, but which appeared somewhat unusual for the place where it was found. They then went to the manager's apartment and used

the telephone to call police headquarters and were reminded that a teletype had been received by the Portland Police Department concerning the "Top O Scott" burglary. The officers then secured a warrant and searched the apartment again. The affidavit for the warrant recited "* * * I knocked on the door to speak to the residents of said apartment and I observed directly below my person and on the floor approximately one foot from the apartment door a green money wrapper bearing the name 'Top O Scott Golf Course.' I then observed inside the aforementioned apartment a money wrapper identical to the one observed immediately in front of the apartment door." The affidavit is not available to us and it is not known what other language appeared therein, but we are presuming that it included that information had been received by the Portland police to the effect that the home of the operator of the "Top O Scott Golf Course" had been burglarized.

The evidence at the preliminary hearing upon the motion to suppress failed to disclose any articles that were taken under the warrant of which knowledge was gained by the previous illegal entry. In fact, the evidence even failed to disclose what articles were taken under the warrant. However, the following questions were asked one of the searching detectives concerning what was discovered on the original entry:

"Q All right. Did Mr. Ludwig (the apartment house manager) let you in with his key?

"A Yes.

"Q At this time did you observe the things that you later picked up on the search warrant?

"A No, I observed the coin or the money wrapper that I had already seen from the outside of the apartment through the window. We weren't searching the apartment. We were looking for the defend-

> ant here. There was only a couple or three places he could have been that we couldn't have seen through the window, in the closet, under the bed, in the kitchen."

The answer of the officer was incorrect because at the trial it was shown that the plastic bag was taken under the warrant. The bag was introduced in evidence as was part of its contents which were fruits of the burglary. Defendant at the trial again moved the court in general terms to quash the evidence. However, he did not call to the court's attention the significance of the discrepancy between the officer's testimony at the preliminary hearing and that which was given at trial.

 The evidence having been taken under a search warrant, the burden of showing the illegality of its seizure was upon the defendant. See *State v. Elkins,* 245 Or 279, 422 P2d 250 (1966). When defendant failed to show at the preliminary hearing that anything was taken under the warrant of which knowledge was gained by the previous illegal entry, the court had no choice but to deny defendant's motion to quash. The original entry was illegal but it was not shown to have induced the subsequent securing of the warrant. Nor was the information illegally obtained which was necessary to make a showing of probable cause for the issuance of the warrant. The information concerning the money wrappers which was secured prior to the illegal invasion of defendant's apartment together with the information concerning the burglary secured via the teletype furnished sufficient probable cause upon which to base the issuance of the warrant. The fact that it was learned upon the illegal entry that the money wrapper which was seen through the window bore the same legend as the

one on the outside was unnecessary to the securing of the warrant. It appeared to be identical upon looking through the window of defendant's apartment and this, together with the other information, was sufficient.

A motion to suppress must be made prior to trial, unless the defendant is unaware of the seizure. *State v. Laundy*, 103 Or 443, 493-494, 204 P 958, 206 P 290 (1922); *State v. Goldstein et al,* 111 Or 221, 225, 224 P 1087 (1924); *State v. Haynes*, 233 Or 292, 294, 377 P2d 166 (1963). The reason for the rule is that the continuity of the trial should not be interrupted for protracted periods for the purpose of determining admissibility of evidence. If defendants are allowed a second opportunity, through evidence adduced at trial, to show that property was illegally seized, it will lead to two hearings on the same matter and there will be a waste instead of a saving of trial time. If defendant was misled by the officer's incorrect testimony at the preliminary hearing and the truth was not discovered until the time of trial, an exception should be made. However, defendant was present at the time of the search and necessarily must have known of the seizure of the bag and its contents. At the preliminary hearing the officer testified he had seen the plastic bag during the original illegal search. Therefore, defendant knew at the time of the preliminary hearing of the incorrectness of the officer's testimony. It was defendant's duty to rebut the incorrect testimony. He produced no evidence at the hearing of any kind. In addition, the significance of the change in the testimony was never called to the trial judge's attention when the motion to quash was renewed at trial. The trial judge cannot be expected to comprehend the implications involved in the conflict in testimony unless

the matter is specifically called to his attention. In some instances the trial judge will not even be the same judge who presided at the preliminary hearing. No error was committed in admitting the evidence seized under the warrant.

■ Defendant next contends that his confession was coerced by the illegal seizure. He claims he would not have confessed if he had not known the police had the evidence seized under the warrant. This is a novel idea of no merit.

He also contends he was not permitted to consult with his attorney prior to making the confession and that he was coerced into making it. After his arrest and before being questioned he was told of his right to have an attorney and with the assistance of the officers called his attorney who came to the police station to see him. The next day he was asked if he cared to make a statement and said he wished to talk to his attorney again. He called his attorney but was not successful in contacting him because the attorney was out of his office. He claims he was afforded no further opportunity to call. The officer taking the statement testified that he returned on the third day and asked the defendant if he had contacted his attorney yet, and the defendant told him that he had not but that he didn't think it was necessary. He then gave a statement. Defendant's evidence concerning coercion was extremely weak and was rebutted by the state. The court found he was fully advised of his right to counsel and to remain silent, and that the statement was voluntarily given.

■■■ The question of whether or not an accused has been adequately advised of his rights and has nevertheless waived them is one of fact for the court.

*State v. Keller,* 240 Or 442, 448, 402 P2d 521 (1965). Whether the statement is actually coerced is a preliminary determination for the court which is in turn passed upon by the jury, or in this case the judge sitting as a jury. *State v. Brewton,* 238 Or 590, 603, 395 P2d 874 (1964). There was adequate evidence to sustain the court's findings in each instance. Defendant had consulted with his lawyer and made up his mind he wished to give a statement. There is nothing that prevents a person who is represented by counsel from waving his right to remain silent. Even *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L ed2d 694 (1966), recognizes that an express statement by an individual that he is willing to make a statement and does not want an attorney, followed closely by a statement, can constitute a waiver.

▮▮▮▮ Defendant next contends he was deprived of his right to a preliminary hearing. An information of a felony was filed against defendant and a preliminary hearing was requested and set for April 12, 1965. However, an indictment was returned against him on April 8 prior to the hearing and no hearing was held. The original indictment was defective and was dismissed and a new indictment returned April 15. The assignment of error is without merit. The purpose of a preliminary hearing is to determine whether sufficient cause to answer to the charge exists prior to indictment. A grand jury may indict a person it believes to be guilty of crime whether or not that person has been held to answer. If it does, no preliminary hearing is necessary. *Anderson v. Gladden,* 234 Or 614, 627, 383 P2d 986 (1963) ; *Anderson ex rel Poe v. Gladden,* 205 Or 538, 547, 288 P2d 823 (1955) ; cert den 350 US 974, 76 S Ct 451, 100 L ed 845 (1956).

The judgment of conviction is affirmed.

DENECKE, J., dissenting.

The accused had retained an attorney and had been advised by that attorney, all of which was known to the state. Under such circumstances, I am of the opinion that there can be no interrogation except in the presence of counsel or upon the clear termination of the attorney-client relationship. My views are set out in my dissent in *State v. Atherton,* 242 Or 621, 629, 410 P2d 208 (1966). *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L ed2d 694 (1966), appears to me to support my conclusion.

SLOAN, J., joins in this dissent.