No. 51          December 11, 2025          575

IN THE SUPREME COURT OF THE
STATE OF OREGON

JORDON PERKINS,
*Petitioner-Relator,*

*v.*

Corey FHUERE,
Superintendent,
Oregon State Penitentiary,
*Defendant-Adverse Party.*

(CC 23CV53183) (SC S071631)

En Banc

Original proceeding in mandamus.*

Argued and submitted June 5, 2025.

Lindsey Burrows, O'Connor Weber LLC, Portland, argued the cause and filed the briefs for relator.

Paul L. Smith, Deputy Solicitor General, Salem, argued the cause and filed the brief for adverse party. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Nadia H. Dahab, Sugerman Dahab, Portland, filed the brief for *amici curiae* The American Civil Liberties Union of Oregon, Oregon Federal Public Defender, The Criminal Justice Reform Clinic at Lewis & Clark Law School, and Oregon Criminal Defense Law Association. Also on the brief were Eri Andriola, ACLU Foundation of Oregon, Inc., Portland; Jessica G. Synder and Julie Vandiver, Office of the Federal Public Defender, Portland; Aliza Kaplan, Criminal Justice Reform Clinic at Lewis & Clark Law School, Portland; and Daniel C. Silberman and Erik Blumenthal, Oregon Criminal Defense Law Association, Salem.

_____

* On petition for alternative writ of mandamus from an order of the Marion County Circuit Court, Jodie A. Bureta, Judge.

Janis C. Puracal, Forensic Justice Project, Portland, filed the brief for *amicus curiae* Forensic Justice Project. Also on the brief were Bryon C. Lichstein; and Robert B. Rocklin, Eugene.

Kenneth A. Kreuscher, Oregon Innocence Project, Portland, filed the brief for *amici curiae* Oregon Innocence Project and Innocence Network.

BUSHONG, J.

The alternative writ of mandamus is dismissed.

**BUSHONG, J.**

Relator contends that this case presents an important issue of first impression in Oregon: whether a person can state a cognizable claim for post-conviction relief under Oregon's Post-Conviction Hearing Act (PCHA), ORS 138.510 to 138.680, by alleging a freestanding claim of actual innocence. But because this case comes to us on a petition for mandamus relief after the post-conviction court granted the state's motion to dismiss relator's petition for post-conviction relief, and because mandamus relief is available only to enforce a known, clear legal right, *Gollersrud v. LPMC, LLC*, 371 Or 739, 743, 541 P3d 864 (2023), the issue presented here is whether the post-conviction court was required by law to deny the state's motion.[1]

Relator alleged in his petition for post-conviction relief that his convictions and sentences for rape and other sex crimes were unconstitutional—and thus, relief was available under ORS 138.530(1)(a) and (c)—because he is innocent of those charges. Relator's claim of innocence is based on an affidavit from the victim stating that she had "lied" when she testified at relator's criminal trial that the sexual acts between them had been nonconsensual. Thus, relator's innocence claim is based on newly discovered evidence that the victim is recanting her trial testimony. We conclude that relator has not stated a claim that is cognizable under the PCHA, and, therefore, the post-conviction court was not required by law to deny the state's motion to dismiss. For that reason, we decline to issue a peremptory writ of mandamus, and we dismiss the alternative writ that we previously issued in this case.

## I. BACKGROUND

### A. *Relator's Criminal Trial*

We begin by summarizing the evidence presented at relator's criminal trial, taken from the trial court record.[2] In 2014, relator was indicted on charges of first-degree rape,

---

[1] Relator sued defendant in his official capacity as the Superintendent of the Oregon State Penitentiary. We refer to defendant in this opinion as "the state."

[2] The state submitted the full transcript from relator's criminal trial in an appendix to its brief.

first-degree sodomy, first-degree unlawful sexual pene-
tration, first-degree sexual abuse, and other charges, all
allegedly committed on the same date against the same vic-
tim. The state's evidence at trial included testimony from
the following witnesses: the victim; two people who saw the
victim immediately after her altercation with the alleged
assailants; relator's codefendant; the victim's sister; the
patrol officer who interviewed the victim at the hospital; the
detective who conducted the investigation; a sexual assault
nurse examiner; and an Oregon State Police (OSP) forensic
scientist.

   The victim testified that she had agreed to meet
with relator's codefendant, but when he arrived to pick her
up in an SUV, he was accompanied by two other men. The
victim—who was 19 years old at the time—was upset because
she expected the codefendant to arrive by himself, but she
got into the back seat of the SUV next to him. Relator was
seated in the front passenger seat at that point and a third
man was in the driver's seat. The SUV then drove away and
parked at a different location, at around 2:30 or 3:00 a.m.
The victim and the three men drank tequila and smoked
marijuana, and at some point, relator climbed into the back
seat, leaving the victim seated in the middle, between rela-
tor and the codefendant.

   According to the victim's trial testimony, relator
then began touching her in a sexual way and tried to pull
her pants down. She resisted and tried to get out of the SUV,
but relator and the codefendant prevented her from leav-
ing. The victim testified that relator and the codefendant
then forcibly removed her clothes, and that relator touched
her breasts and vagina, digitally penetrated her anus, and
then vaginally raped her, ejaculating on her face. The vic-
tim testified that the codefendant also vaginally raped her,
and then both men forced her to perform oral sex on each
of them and on the man sitting in the driver's seat. Relator
and the codefendant then pulled the victim into the back
seat. The victim testified that she hit relator and tried to
leave, but relator punched her and choked her. He also took
her debit card out of her wallet and demanded that she give
him the PIN. The victim testified that she gave him the

PIN because she feared for her life. Eventually, she stated that they "tossed" her out of the SUV. She hit the window with her hand because she wanted her purse; relator opened the door, punched her, and threw the purse. The SUV then drove off.

A man living in the house where the SUV had been parked testified that he saw the victim "pound" on the window of the SUV before it drove off. He went inside the house and called for his wife, who also testified at the trial. According to those witnesses, the victim "looked like a zombie" with her pants unbuttoned and "halfway down her hip." They stated that her hair was "messed up" and her shirt "was all kind of distorted," and they testified that she was "crying hysterically" at the time. The victim's sister testified that, sometime later, she heard the victim "banging" on her door and yelling "they beat me, they raped me." When the victim's sister opened the door, she saw that the victim was "all bloody," and she immediately took her to the hospital.

A patrol officer interviewed the victim at the hospital. He testified that the victim was almost "catatonic" at the time. Photos taken at the hospital were introduced at trial, showing the injuries that the victim had sustained and the bloody sweater that she had been wearing. A sexual assault nurse examiner conducted a physical examination of the victim. She testified that the victim had bruises and a cut on her face, a tear at the base of her vaginal opening, redness and tenderness in her vaginal area, and other injuries. The detective who investigated the crime testified about the victim's description of the assault and her identification of relator and the codefendant from photo lineups. The OSP forensic scientist testified that swabs from the victim's jaw and mouth tested positive for semen, that DNA testing of those swabs revealed three contributors but that only two contributors could be positively identified—the victim and the codefendant.[3]

The codefendant testified that he had pleaded guilty to charges of second-degree kidnapping, first-degree sodomy, and second-degree robbery for his role in the assault,

_____

[3] Relator could be excluded as the contributor of some of the DNA samples but not all of them.

and that his plea agreement did not include any type of cooperation agreement or other incentive to testify at relator's trial. He acknowledged in his testimony that the victim had performed oral sex on all three men in the SUV and that it was "obvious [that] there would be consequences" if she refused to do so. He further testified that he and relator had shoved the victim to the front seat of the SUV to perform oral sex on the driver, and that, after they were done sexually assaulting the victim, relator forced her out of the vehicle and punched her.

Relator also testified at his criminal trial. He testified that the victim had consensually performed oral sex on the codefendant and had invited relator to have sex with her, but he "couldn't get an erection at all." He admitted that he had touched the victim's vagina and anus and put his finger inside of her anus. He testified that the victim tried to perform oral sex on him but he "could not get it up, [and] did not ejaculate." He further testified that he got into a verbal altercation with the victim, and that she had "slapped" him in the face with a tampon. That caused him to feel "disrespected" so he "grabbed her neck and pushed her out" of the vehicle. He admitted that he punched the victim after she started banging on the vehicle. Relator also acknowledged that he had lied to the police investigators when he told them that "no one had any sexual activity" with the victim in the SUV.

At the conclusion of the trial, a jury found relator guilty of two counts of first-degree rape, two counts of first-degree sodomy, one count of first-degree sexual penetration, one count of first-degree sexual abuse, and one count of third-degree assault.[4] At sentencing, relator maintained that the victim had consented to the sexual activity, but he apologized for hitting her and abandoning her on the side of the road. The court sentenced relator to a term of incarceration totaling 575 months, stating that, like the jury, the court was convinced by the evidence that the victim "was not a willing participant" in the sexual activity. The Court of Appeals affirmed on direct appeal, and this court denied review. *State*

---

[4] The jury also found relator not guilty of other charges, including second-degree kidnapping, second-degree robbery, third-degree robbery, and one count of first-degree sexual abuse.

*v. Perkins*, 289 Or App 378, 412 P3d 1212 (2017), *rev den*, 362 Or 699 (2018).

B.  *Post-Conviction Proceedings*

In 2018, relator filed a timely petition for post-conviction relief. He asserted several grounds for relief but did not include a freestanding actual innocence claim. The post-conviction court denied relief, but the Court of Appeals reversed in part and remanded for further proceedings. *Perkins v. Fhuere*, 332 Or App 290, 549 P3d 25, *rev den*, 372 Or 812 (2024).

In 2024, relator filed a second petition for post-conviction relief—the one that is at issue in this case— alleging that he "is actually innocent of the crimes of conviction." Relator alleged that his innocence "is demonstrated not merely by [the victim's] complete and total recantation of the charges but also the inconsistencies between her pretrial statements and trial testimony, which supports the conclusion that her original trial testimony was false." Relator alleged that convicting and sentencing an innocent person to prison violates Article I, sections 10 and 16, of the Oregon Constitution, and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

Relator filed an affidavit in support of his petition. The affidavit quotes the following sworn statement by the victim:

> "I.   I am over the age of 18, not on any mind-altering medication or drug and I am of sound mind and not currently in the United States Armed Forces.
>
> "II.   On the day of February 22nd 2014, I got together with [relator] and some friends. I had only consensual sex with [relator] and was not forced to do anything sexual that night. Afterwards, we got into an argument and he pushed me in the face and when we were outside of the truck, he punched me in the face. That is what I was really mad about and why I lied and exaggerated about the non-consensual sex."[5]

---

[5] Relator later filed an amended petition for post-conviction relief and filed the victim's sworn statement as a trial exhibit in support of his amended petition.

The state filed a motion to dismiss the petition under ORCP 21 A(1)(h) for failure to state a claim. The state contended that relator's claim failed because "actual innocence" is not a cognizable claim for post-conviction relief.[6] After briefing and a hearing, the post-conviction court granted the state's motion to dismiss, stating in a letter opinion that "[t]here is no legal authority allowing a single stand[-]alone claim of actual innocence to state a claim of relief."[7] The post-conviction court entered a general judgment dismissing the petition with prejudice pursuant to ORS 138.525.

ORS 138.525 authorizes a court to enter judgment dismissing a "meritless" petition for post-conviction relief. ORS 138.525(1). A meritless petition is "one that, when liberally construed, fails to state a claim upon which post-conviction relief may be granted." ORS 138.525(2). The statute further provides that "a judgment dismissing a meritless petition is not appealable." ORS 138.525(3). Because the judgment entered by the post-conviction court in this case was not appealable under that statute, relator filed a petition for mandamus relief in this court, seeking a writ directing the post-conviction court to vacate its order and judgment dismissing relator's amended petition for failure to state a claim. We issued an alternative writ and, after the post-conviction court declined to vacate its order and judgment, set a schedule for briefing and argument.[8]

---

[6] As noted, this was relator's second petition for post-conviction relief, and it was untimely. Under ORS 138.550(3), successive petitions are generally barred because all grounds for relief ordinarily must be asserted in the original petition for post-conviction relief. And, under ORS 138.510(3), in general, to be timely, a petition must be filed within two years after the judgment in the underlying criminal case became final after all appeals. Those procedural bars do not apply if the court finds grounds for relief asserted "which could not reasonably have been raised" in a timely original petition. ORS 138.510(3); ORS 138.550(3). The state did not contend in this case that the successive nature of the petition or its untimeliness constituted procedural bars that precluded the court from considering relator's petition.

[7] The post-conviction court further stated that relator "has made an excellent record, and in the event this Court is wrong, I am hopeful that a higher court will provide some guidance."

[8] After we issued the alternative writ, the state filed a "Notice Regarding Alternative Writ of Mandamus" in the post-conviction court. In that notice, the state contended that the post-conviction court had two options in response to the alternative writ: (1) decline to vacate the order of dismissal, which would result in briefing and resolution in the Supreme Court; or (2) vacate its order and proceed to a hearing in the post-conviction court on the merits of the actual innocence claim. Relator opposed the second option proposed by the state, contending that

## II.   DISCUSSION

Resolving the question presented in this case requires us to interpret the relevant provisions of the PCHA. We interpret the PCHA by applying our established methodology, examining the statutory text, context, and any relevant legislative history. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). We begin with the relevant text of that statute.

ORS 138.530(1) provides that post-conviction relief "shall be granted" when the petitioner establishes one or more of the following grounds for relief:

> "(a)   A substantial denial in the proceedings resulting in petitioner's conviction or in the appellate review thereof, of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void.

> "* * * * *

> "(c)   Sentence in excess of, or otherwise not in accordance with, the sentence authorized by law for the crime of which petitioner was convicted; or unconstitutionality of such sentence."

Thus, to obtain relief under paragraph (1)(a), relator was required to establish a substantial denial of his constitutional rights "in the proceedings" that resulted in the conviction, and that rendered the conviction void. And to obtain relief under paragraph (1)(c), relator was required to establish that the "sentence" imposed was unlawful or unconstitutional.

A.   *Has relator alleged a substantial denial of his constitutional rights "in the proceedings" that resulted in his conviction under ORS 138.530(1)(a)?*

By requiring a substantial constitutional violation "in the proceedings" that resulted in a conviction, paragraph (1)(a) focuses on the *process* through which a conviction was obtained. Relator contends that the conviction and sentencing

---

withdrawing the dismissal order would unnecessarily delay this court's ultimate resolution of the "fundamental and important question" of whether actual innocence is a viable claim for post-conviction relief. The post-conviction court signed an order denying the state's motion to dismiss, but then vacated that order. Briefing and argument then proceeded in this court.

of an innocent person based on recanted trial testimony results in a constitutional violation "in the proceedings" that led to his conviction—making relief available under ORS 138.530(1)(a).[9] However, the text of the PCHA does not readily suggest that it reaches a claim of innocence based on evidence discovered after the conviction and sentence are final, insofar as the PCHA does not mention recanted testimony or newly discovered evidence as a basis for relief. And the available evidence of the legislature's intent suggests that that omission was intentional.

The PCHA was enacted in 1959. Or Laws 1959, ch 636, §§ 3, 5. The provisions that are now codified as ORS 138.530(1)(a) and (c) were included in section 3 of that legislation. The parties have not cited specific evidence of legislative intent in the history of that enactment, but both parties cite a law review article written by two lawyers who participated in drafting the bill that became the PCHA: Jack G. Collins and Carl R. Neil, *The Oregon Postconviction-Hearing Act*, 39 Or L Rev 337, 346 (1960). This court has often relied on that article as evidence of legislative intent underlying the PCHA. *See Watkins v. Ackley*, 370 Or 604, 620 n 14, 523 P3d 86 (2022) (stating that, because the authors were involved in drafting the PCHA, this court "has often considered the Collins and Neil article as important context when interpreting a provision of the PCHA"); *Strasser v. State of Oregon*, 368 Or 238, 264, 489 P3d 1025 (2021) (relying on the Collins and Neil article as evidence of legislative intent); *Verduzco v. State of Oregon*, 357 Or 553, 570, 355 P3d 902 (2015) (noting that the court "repeatedly" has looked to that article in seeking to understand the PCHA).

According to that article, section 3 of the 1959 act—which, as noted, includes the provisions at issue here—"sets forth the substantive grounds upon which a conviction may be challenged under the act." Collins and Neil, 39 Or L Rev at 345. According to the authors, "[n]ewly discovered evidence is not a ground for relief under the act." *Id.* at 346. The

---

[9] Relator also contends that a conviction based on perjured testimony resulted in a sentence that was unconstitutional. However, relator must challenge an unconstitutional sentence under paragraph (1)(c), not paragraph (1)(a). And, as we explain below, relator's allegations do not present a constitutional challenge to a "sentence" that is cognizable under paragraph (1)(c).

article acknowledges that, "occasionally a conviction, procedurally regular in all respects and supported by otherwise substantial evidence, can later be shown to be erroneous and innocence established." *Id.* In that situation, the authors explained, "there is presumably no judicial relief available to correct the wrong after the time for a motion for a new trial has expired." *Id.* at 347.[10] The authors noted that the common-law remedy of *coram nobis* "might have been available in [that] situation[,]" but subsection 4(1) of the act—now ORS 138.540(1)—"forecloses [that] possibility by abolishing coram nobis in criminal cases." *Id.*[11] Thus, the authors concluded, "[t]he problem of newly discovered evidence should be the subject of additional legislation." *Id.*

We discussed, but did not decide, whether newly discovered evidence could be grounds for post-conviction relief under the PCHA in *Anderson v. Gladden*, 234 Or 614, 383 P2d 986 (1963). The petitioner in that case sought post-conviction relief based on, among other reasons, "newly discovered evidence that there was perjury in his first trial." *Id.* at 625. We noted that the Collins and Neil article "suggested that further legislation might be necessary" to provide a remedy for such a claim, but "le[ft] open the question whether newly discovered evidence can ever give rise to any kind of common-law post-conviction judicial relief." *Id.* at 626. We concluded that "the trial court committed no error when it found the affidavits [supporting the claim of perjured testimony] inadequate in fact to afford grounds for relief." *Id.* at 626-27. Thus, we found it unnecessary to decide "what sort of relief might lie if there were convincing evidence that an innocent person wrongfully had been imprisoned." *Id.* at 627.

---

[10] As noted previously, newly discovered evidence can provide relief from the procedural bars that ordinarily limit a petitioner to one petition for post-conviction relief and requires the petitioner to raise all issues in that petition. *See* ORS 138.510(3); ORS 138.550(3) (procedural bars do not apply if the court finds grounds for relief "which could not reasonably have been raised" in a timely original petition).

[11] *Amici* contend that a person who has been convicted of a crime and is claiming that newly discovered evidence establishes their innocence would have had a *coram nobis* remedy at common law, and that the PCHA provision abolishing "relief in the nature of coram nobis," ORS 138.540(1), violates Article I, section 10, of the Oregon Constitution. Relator did not assert an Article I, section 10, violation in his mandamus petition and joined *amici*'s argument only in his reply brief. Accordingly, we decline to address that issue in this mandamus proceeding.

An allegation that a conviction was procured by testimony that was subsequently recanted is not, on its own, enough to allege a constitutional violation in the proceedings that led to the conviction, as required for relief under ORS 138.530(1)(a). We have recognized that, in some circumstances, a conviction that is based on perjured testimony can result in a federal due process violation in the proceedings that resulted in the conviction. *See Brooks v. Gladden*, 226 Or 191, 195, 358 P2d 1055 (1961) (stating that ORS 138.530(1)(a) provides a post-conviction remedy for a substantial denial of federal due process rights if the petitioner meets his "burden of showing that he has been denied due process of law"). However, those circumstances are not alleged here.

As the Collins and Neil article explains, "[w]here the newly discovered evidence would prove the conviction invalid under the [F]ourteenth [A]mendment, *as in the case of perjured testimony knowingly used by the prosecutor*, it would no doubt constitute grounds for relief" under section 3 of the 1959 act. 39 Or L Rev at 346 (citing *Mooney v. Holohan*, 294 US 103, 55 S Ct 340, 79 L Ed 791 (1935) (emphasis added)). In *Mooney*, the United States Supreme Court stated that it would violate due process "if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured." 294 US at 112. Subsequent Supreme Court cases have consistently maintained that, to establish a due process violation based on a witness's recanted trial testimony, a defendant must allege that the prosecution *knowingly* procured false testimony. *Hysler v. Florida*, 315 US 411, 62 S Ct 688, 86 L Ed 932 (1942).

In *Hysler*, the Supreme Court stated that, if a state, "whether by the active conduct or the connivance of the prosecution, obtains a conviction through the use of perjured testimony, it violates civilized standards for the trial of guilt or innocence and thereby deprives an accused of liberty without out due process of law." 315 US at 413. The Court went so far as to state that a person making such a claim "cannot, of course, contend that mere recantation of testimony is in itself ground for invoking the Due Process Clause against

a conviction." *Id.* However, if a state "knowingly used false testimony which was extorted from a witness by violence and torture, one convicted may claim the protection of the Due Process Clause against a conviction based upon such testimony." *Id.* (internal quotation marks omitted).

As recently as this year, the Supreme Court again held that "a conviction knowingly 'obtained through the use of false evidence' violates the Fourteenth Amendment's Due Process Clause." *Glossip v. Oklahoma*, 604 US 226, 246, 145 S Ct 612, 221 L Ed 2d 90 (2025) (quoting *Napue v. Illinois*, 360 US 264, 269, 79 S Ct 1173, 3 L Ed 2d 1217 (1959)). And in *Napue*, the Court stated that "it is established that a conviction obtained through use of false evidence, *known to be such by representatives of the State*, must fall under the Fourteenth Amendment." 360 US at 269 (emphasis added). The Court in *Napue* also held that it violates due process "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.*; *see also Glossip*, 604 US at 246 (to establish a due process violation, a defendant must show that "the prosecution knowingly solicited false testimony or knowingly allowed it to go uncorrected when it appeared") (internal quotation marks omitted). That principle applies even when the false testimony "goes only to the credibility of the witness." *Napue*, 360 US at 269.

The Supreme Court has never held that a witness's recantation of their trial testimony—standing alone—is sufficient to state a claim for a violation of a defendant's due process rights. And, in fact, the Court has declined to find a constitutional violation in the absence of evidence of knowledge by the prosecution that the trial testimony was false, although some members of the Court have urged it to do so. *See Jacobs v. Scott*, 513 US 1067, 1069-70, 115 S Ct 711, 130 L Ed 2d 618 (1995) (Stevens, J., dissenting); *Durley v. Mayo*, 351 US 277, 290-91, 76 S Ct 806, 100 L Ed 1178 (1956) (Douglas, J., dissenting).

Thus, for purposes of relief under the PCHA, a person claiming to be innocent and contending that their conviction violated due process because it was based on false testimony must also allege that the prosecution knowingly solicited the false testimony or allowed it to go uncorrected.

Absent an allegation that the prosecution *knowingly* solicited the false testimony or *knowingly* allowed it to go uncorrected, an allegation that a trial witness subsequently recanted their trial testimony is not enough to allege a due process violation in the proceedings as required for relief under ORS 138.530(1)(a).[12] Relator makes no allegation that the prosecution knowingly procured false testimony at his criminal trial. Accordingly, we conclude that relator's innocence claim based on the victim's recantation does not allege a basis for relief under ORS 138.530(1)(a).

B.  *Has relator alleged under ORS 138.530(1)(c) that the "sentence" imposed was unlawful or unconstitutional?*

As discussed above, ORS 138.530(1)(c) provides that post-conviction relief is available to redress an unlawful or unconstitutional "sentence." Relator contends that sentencing an innocent person to prison is unconstitutional, and, therefore, he is challenging a "sentence" that is unlawful or unconstitutional within the meaning of ORS 138.530 (1)(c). We do not agree that relator is challenging a "sentence" within the meaning of paragraph (1)(c). Relator's innocence claim alleges, based on the victim's recantation of her trial testimony, that he was wrongly convicted. A claim challenging the lawfulness of a conviction does not also challenge the lawfulness of the sentence itself. That conclusion is supported by evidence of what the legislature intended when it included paragraph (1)(c) in the 1959 act.[13]

---

[12] The state does not concede that the victim's trial testimony in this case was false; it points to other evidence in the trial court record that supported her testimony. Because we conclude that relator failed to allege the prosecutor's "knowledge" as required to state a claim that a conviction based on false testimony violated the Due Process Clause, we need not decide what a person must show to establish that the testimony was false or that a conviction was "based on" such testimony. Similarly, because we address relator's claim at the pleading stage, we need not decide the standard that a court would apply to determine whether the evidence was sufficient for relief under the PCHA.

[13] Our conclusion that relator, in challenging the lawfulness of his conviction, is not also challenging his sentence, is consistent with a related statute, ORS 138.005(5), which defines "sentence" to mean "all legal consequences established or imposed by the trial court after conviction of an offense[.]" However, because that definition was adopted after the PCHA was enacted in 1959, we cannot presume that the legislature necessarily intended "sentence" as used in ORS 138.530(1)(c) to mean the same thing as the definition of "sentence" in ORS 138.005(5).

The Collins and Neil article stated that paragraph (1) (c) "codifies a ground for relief previously available in habeas corpus proceedings in permitting postconviction attack upon unconstitutional or irregular sentences." *Id.* at 345. When the PCHA was enacted, a writ of habeas corpus was available to determine if a person was imprisoned or restrained illegally. *See* ORS 34.310 (1959) (describing grounds for writ of habeas corpus. A challenge to the lawfulness of a *conviction* could be raised only on a writ of review. *See* ORS 34.010 to 34.100 (1959) (describing writ of review process).

The Collins and Neil article cited *Landreth v. Gladden*, 213 Or 205, 324 P2d 475 (1958), which held that the validity of a prior conviction upon which a habitual offender *sentence* was based could be asserted in a habeas corpus proceeding. *Collins and Neil*, 39 Or L Rev at 345 n 48. The court indicated that a proceeding in habeas corpus "is the proper method of testing the legality of petitioner's confinement" but it did not allow for consideration of "any errors in the * * * convictions." *Landreth*, 213 Or at 215 (quoting *State ex rel Medley v. Skeen*, 138 W Va 409, 413, 76 SE2d 146 (1953)). *See also Barber v. Gladden*, 210 Or 46, 62, 309 P2d 192 (1957) (remedy of habeas corpus is not available to address errors in a conviction that could have been raised on direct appeal); *Macomber v. State et al.*, 181 Or 208, 218, 180 P2d 793 (1947) (same).

Consistent with the holding in *Landreth*, *Collins and Neil* stated that subparagraph 3(1)(c), together with section 1 of the act, "would seem to allow relief against a prior conviction upon which a habitual-criminal *sentence* is partly based." 39 Or L Rev at 345 (emphasis added). The fact that subparagraph (3)(1)(c) permits a post-conviction challenge to a *sentence* that is unlawful for the crime of conviction suggests that that paragraph does not permit a challenge to the conviction itself. Nowhere in the article did the authors suggest that a challenge to the validity of the underlying *conviction* could be asserted as a challenge to the *sentence* under subparagraph (3)(1)(c) of the act.

We acknowledge that courts in other jurisdictions have concluded that a freestanding actual innocence claim is cognizable under those states' post-conviction relief statutes, reasoning that the conviction and punishment of an innocent person would violate state constitutional prohibitions on cruel and unusual punishment and deprivations of liberty without due process. *See, e.g.*, *Schmidt v. State*, 909 NW2d 778 (Iowa 2018); *Montoya v. Ulibarri*, 142 NM 89, 163 P3d 476 (2007); *State ex rel Amrine v. Roper*, 102 SW3d 541 (Mo 2003); *Miller v. Comm'r of Corr.*, 242 Conn 745, 700 A2d 1108 (1997); *People v. Washington*, 171 Ill 2d 475, 665 NE2d 1330 (1996). But those cases involve post-conviction relief statutes or state constitutional provisions that are significantly different from Oregon's PCHA and the Oregon Constitution. Three of those cases—*Schmidt*, *Amrine*, and *Miller*—involved state post-conviction statutes that authorized courts to grant relief "in the interest of justice" or where newly discovered evidence shows that relief is necessary to correct a "manifest injustice."[14] Oregon's PCHA does not include such a provision.[15]

Relator's allegation does not state a claim that is cognizable under ORS 138.530(1)(c), because it does not present a constitutional challenge to relator's "sentence" within the meaning of that provision. Instead, that claim questions the factual basis for relator's conviction, based on

---

[14] In *Schmidt*, the court relied on subsection 822.2(1)(d) of Iowa's Post-Conviction Hearing Act, which authorizes a person to seek relief if there is "'evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice.'" 909 NW2d at 798 (quoting Iowa Code § 822.2(1)(d)). In *Amrine*, relief was available under an exception previously recognized by the Missouri Supreme Court that allowed it to grant relief to correct a "manifest injustice." The court explained that petitioner's claim "turns on the application of the manifest injustice standard to his claim of actual innocence." 102 SW3d at 546. In *Miller*, the court noted that it had recognized a freestanding actual innocence claim in an earlier case, *Summerville v. Warden*, 229 Conn 397, 422, 641 A2d 1356 (1994). *Miller*, 242 Conn at 746. *Summerville*, in turn, was based on a Connecticut statute that mandated the habeas court to "dispose of the case as law and justice require." *Summerville*, 229 Conn at 422 (quoting Conn Gen Stat § 52-470(a)).

[15] The other two cases—*Montoya* and *Washington*—were based on state constitutional provisions that prohibited deprivations of liberty without due process. The Oregon Constitution does not have a due process clause, *see* Hans A. Linde, *Without "Due Process": Unconstitutional Law in Oregon*, 49 Or L Rev 125 (1970), and relator does not contend that any other provision of the Oregon Constitution supports commensurate principles of due process.

newly discovered evidence that the victim has now recanted her trial testimony. As a result, we are left with the situation that Collins and Neil recognized when the PCHA was enacted: "Newly discovered evidence is not a ground for relief under the act." 39 Or L Rev at 346. As those authors concluded, "[t]he problem of newly discovered evidence should be the subject of additional legislation." *Id.* at 347.

The legislature has addressed the issue of actual innocence in two statutes: ORS 138.696, which authorizes courts to set aside a conviction based on exonerating DNA evidence, and ORS 30.657, which authorizes compensation for a person who was wrongfully convicted and later exonerated. But the legislature has not amended the PCHA to address a claim that newly discovered evidence shows that a defendant had been wrongly convicted.[16]

The legislature could authorize courts to consider such a claim by, for example, amending the PCHA to allow post-conviction relief based on newly discovered evidence when necessary to correct a "manifest injustice," as other states have done, or when the evidence of actual innocence is sufficiently compelling that it is comparable to exonerating DNA evidence.[17] But the PCHA as currently written does not provide a basis for the court to address relator's claim that newly discovered evidence of the victim's recantation of her trial testimony establishes his innocence.

## III.   CONCLUSION

A person seeking post-conviction relief under ORS 138.530(1)(a) and (c) must allege either that a constitutional violation "in the proceedings" resulted in the underlying conviction or that the "sentence" imposed was unconstitutional. Newly discovered evidence that a victim has

---

[16] As we have noted, the fact that the PCHA does not address a claim that newly discovered evidence shows that a person has been wrongly convicted may, in some circumstances, leave the courts "powerless to remedy a manifestly erroneous conviction," a prospect that "obviously would not adorn the administration of justice." *Anderson*, 234 Or at 626.

[17] As relator points out, there is evidence that many innocent people have been wrongly convicted. According to the National Registry of Exonerations, there have been 3,756 exonerations nationwide—including 43 in Oregon—since 1989. *See National Registry of Exonerations*, https://www.law.umich.edu/special/exoneration/ (accessed December 2, 2025).

recanted her trial testimony, without more, is not sufficient to allege a constitutional violation that occurred "in the proceedings" that led to relator's conviction within the meaning of paragraph (1)(a) of ORS 138.530. Relator also does not assert a constitutional challenge to his "sentence" within the meaning of that word in paragraph (1)(c) of that statute. Accordingly, the post-conviction court was not required by law to deny the state's motion to dismiss relator's petition for post-conviction relief.[18]

The alternative writ of mandamus is dismissed.

---

[18] In concluding that relator's allegation that newly discovered evidence that the victim has recanted her trial testimony is insufficient to state a cognizable claim under the PCHA, we do not mean to preclude the possibility that other grounds for asserting one's innocence might state a cognizable claim. As we have noted, one ground for stating a cognizable claim is an allegation that a conviction was based on false testimony that the prosecution knowingly solicited or knowingly allowed to go uncorrected. There may be other grounds. Our decision in this case is limited to the allegations in relator's petition for post-conviction relief.